## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| **MARIELLE ("MOLLY") KRONBERG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:09cv947** |
| ) | **AJT/TRJ** |
| **LYNDON LAROUCHE,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM IN SUPPORT OF
### <u>DEFENDANTS' MOTION TO DISMISS</u>

Defendants, by counsel, hereby file their memorandum in support of their motion to dismiss as follows:

## I.       INTRODUCTION

In this case, Plaintiff Marielle Kronberg ("Plaintiff") has filed suit against Lyndon LaRouche ("LaRouche"), Lyndon LaRouche Political Action Committee ("LaRouchePAC"), Barbara Boyd, an officer of LaRouchePAC, and EIR News Service, Inc. ("EIR"), which produces *Executive Intelligence Review* magazine. First Amended Complaint ("Complaint"), ¶¶ 6-9. In Count I of the Complaint, Plaintiff alleges a conspiracy in violation of 42 U.S.C. § 1985(2). In Count II, Plaintiff alleges that Defendants published defamatory statements about her that constitute libel per se under Virginia state law.

As set forth herein, Plaintiff's federal lawsuit should be dismissed in its entirety. In pursuing a lawsuit in federal court, Plaintiff has improperly sought to transform a state law defamation claim into a federal statutory civil rights conspiracy lawsuit. As a preliminary matter, Plaintiff lacks standing to pursue her federal conspiracy claim and in any event, Plaintiff fails to plead sufficient facts to plausibly set forth a cause of action for conspiracy. Plaintiff's

state defamation claim is deficient as well.  Plaintiff's Complaint fails to set forth the exact words

of each and every purported defamatory statement for which relief is sought and under the guise

of a defamation claim, seeks recovery for intentional infliction of emotional distress without

satisfying the stringent pleading requirements for such a cause of action.  Accordingly, because

Plaintiff's Complaint is not well pled, it should be dismissed.[1]

## II.    STATEMENT OF ALLEGATIONS

### A.    Parties

Plaintiff is a resident of Leesburg, Virginia.  For many years she and her husband,

Kenneth Kronberg, were members of the National Caucus of Labor Committees (the "NCLC"),

which is an association of individuals who support Lyndon LaRouche and his political

movement.  Complaint, ¶ 5.

Defendant Lyndon LaRouche is the leader of a political movement and has organized

under federal law a political action committee, Lyndon LaRouche Political Action Committee

("LaRouchePAC"), which is also named as a defendant in this action.  Complaint, ¶¶ 6-7.  The

Treasurer of LaRouchePAC is Barbara Boyd who, likewise, is named as a defendant.

Complaint, ¶ 8.

LaRouche also is the Chairman of the Board of Directors of defendant EIR News

Service, Inc. ("EIR"), which is a news publishing corporation that produces LaRouche's

magazine: *Executive Intelligence Review*.  In addition to being Chairman of the Board,

LaRouche is the founding editor and a contributing editor of the magazine.  Complaint, ¶ 9.

---

[1]    Defendants believe that Plaintiff's Massachusetts counsel, John J.E. Markham, II, Esq., as a former Assistant United States Attorney who prosecuted the criminal matters mentioned in the Complaint and others, has a conflict that disqualifies him from representing Plaintiff in this matter.  Defendants are investigating this issue.  By filing this motion to dismiss prior to any motion to disqualify, Defendants do not waive their right to file a motion to disqualify.

### B.    LaRouche Litigation

In 1988, LaRouche was a defendant in a criminal action in this Court ("the LaRouche Litigation").  The Plaintiff here (Kronberg) was one of more than 20 prosecution witnesses in the LaRouche Litigation.  (Plaintiff alleges only that she was a witness, not a party, in the LaRouche Litigation.)  A jury convicted LaRouche and others and LaRouche was sentenced to a five-year prison term.  Complaint, ¶¶ 10-12.  After his release from prison in 1994, LaRouche resumed his political activities.  Complaint, ¶ 13.

### C.    Plaintiff's Allegations

Following the LaRouche Litigation, Plaintiff continued to be a member of NCLC. Complaint, ¶ 5.  She believed LaRouche to be a "political genius" and believed in his "professed dedication to the betterment of society." *Id.*  Plaintiff's husband, Kenneth Kronberg, also continued to work for LaRouche.  Mr. Kronberg was the head of PRM, the printing company that published all LaRouche-related publications.  Complaint, ¶ 14(i).

Plaintiff asserts that in April, 2007, LaRouche and others began a campaign to criticize those operating PMR.  Plaintiff alleges that LaRouche told those running PMR that they should consider suicide because of their failings.  Complaint, ¶ 14(i). [2]  On April 11, 2007, Kenneth Kronberg committed suicide.  Complaint, ¶ 14(i).[3]

---

[2]    There is no allegation that Plaintiff was one of the individuals who operated PMR and who were criticized by LaRouche.

[3]    Following Mr. Kronberg's death on April 11, 2009, Plaintiff began a public and international media campaign in conjunction with long-time opponents of Lyndon LaRouche to blame her husband's death on LaRouche.  Plaintiff has been informed by public authorities and lawyers that there was no factual or legal basis for her claim that LaRouche caused her husband's death according to various postings she has made on the Internet, and she has not filed a wrongful death or similar action because of her husband's death. Nonetheless, Plaintiff has continued her attacks with this lawsuit, alleging in conclusory fashion a contrived conspiracy to violate Plaintiff's civil rights based on events that occurred more than 20 years ago.

Thereafter, on August 18 and 19, 2007, Plaintiff alleges that LaRouche authored and published statements sent to members of the LaRouche organization which attributed Mr. Kronberg's suicide to his feelings of betrayal as a result of Plaintiff's financial support of George Bush in the 2004 presidential election.  Complaint, ¶¶ 14(i) and (iii).   At or around the time of these publications in the summer of 2007,  Plaintiff "severed relations with LaRouche." Complaint, ¶ 5.

More than eight months later, Plaintiff alleges that an April 14, 2008 daily briefing written by LaRouche attributed the suicide of Plaintiff's husband to her having been "on the other side" and also stating that she was a "fraudulent witness" in the LaRouche Litigation 20 years earlier.  Complaint, ¶ 14(iv).  Plaintiff's Complaint identifies no further statements about her in 2008.

In February, 2009, however, Plaintiff alleges that a LaRouchePAC publication falsely accused her of committing perjury in the LaRouche Litigation.  Complaint, ¶ 14(vii).  Plaintiff asserts that in other LaRouche publications between February, 2009 and April, 2009, additional statements were made accusing Plaintiff of giving false testimony in the LaRouche Litigation. Complaint, ¶¶ 14(iv), (v), (vii), (ix)-(xi).

    **D.**    **Plaintiff's Conclusory Conspiracy Allegations**

Plaintiff claims that the statements she has identified in her Complaint were made to injure her for having testified as a witness in the LaRouche Litigation 20 years earlier and that LaRouche, Boyd, LaRouchePAC, and EIR were part of the conspiracy. Complaint, ¶ 14, ¶19). However, Plaintiff's Complaint contains no allegations describing what exactly the Defendants agreed to do, nor describing what exactly the conspiracy consisted of.  Rather, Plaintiff 's

Complaint simply makes general, conclusory allegations that Defendants conspired to injure her because she testified in the LaRouche Litigation. *See, e.g.,* Complaint, ¶¶ 19, 20.

Moreover, there is no allegation identifying any specific injuries that Plaintiff has suffered to her person or property as a result of Defendants' alleged conspiracy. Rather, Plaintiff merely asserts that Defendants have "injured her in her person and property in the manner and to the extent to be proved at trial." Complaint, ¶ 20.

> **E.    Court Jurisdiction Over Plaintiff's Claims**

The Court's jurisdiction over this matter is premised on federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Count I asserts a claim under 42 U.S.C. § 1985. The Court's jurisdiction over Count II is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Complaint, ¶¶ 2, 3. There is no diversity jurisdiction in this case. *See* Complaint, ¶¶ 5-9.

## III.    LEGAL ARGUMENT

> **A.    Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted); *see* Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Twombly*, 550 U.S. at 555. A complaint also is insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must set forth "a claim to relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. For a claim to be facially

plausible, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556.

Here, Plaintiff fails to support with any facts her implausible legal conclusions that beginning in April, 2007, Defendants conspired to injure her for having testified in the LaRouche Litigation 20 years earlier. Accordingly, her claims should be dismissed. *See Shaw v. Churdar*, 2009 U.S. Dist. LEXIS 78397, *5 (D.S.C. Sept. 1, 2009) (citing *Iqbal*, 129 S. Ct. at 1949) (dismissing plaintiff's 42 U.S.C. § 1985 claim where he failed to support his seemingly implausible legal conclusions with any facts).

**B.    Count I Of The Complaint Should Be Dismissed Because Plaintiff Lacks Standing To Bring An Action Under 42 U.S.C. § 1985(2) And The Complaint Fails To State a Claim**

Count I of Plaintiff's Complaint is for conspiracy to injure a witness under 42 U.S.C. § 1985. Subsection 2 of the statute, in relevant part, proscribes conspiracies to "deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2).[4] Subsection 3 of the statute further states that if one or more persons

---

[4]    Section 1985(2), in full, proscribes the following conspiracies: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of

6

engaged in such a conspiracy "do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, . . . the party so injured . . . may have an action for the recovery of damages occasioned by such injury . . . against any one or more of the conspirators." 42 U.S.C. § 1985(3).

There are four distinct clauses in 42 U.S.C. § 1985(2), each creating a distinct cause of action.  Here, Plaintiff has asserted a claim against Defendants for conspiracy to retaliate against her because of her testimony in a federal trial which took place over twenty years ago.  Plaintiff's claim, however, is fatally defective and subject to dismissal for three basic reasons.  First, as a witness and not a party to the LaRouche Litigation, Plaintiff lacks standing to pursue a claim under 42 U.S.C. § 1985(2).  Second, Plaintiff has failed to adequately plead a retaliation claim against Defendants in violation of 42 U.S.C. § 1985(2).  Specifically, Plaintiff has failed to adequately state a conspiracy or an injury caused by any allegedly retaliatory act of the Defendants.  Third, Plaintiff's conspiracy claim is barred by the doctrine of intracorporate immunity.

### 1. Plaintiff Does Not Have Standing to Assert a § 1985(2) Claim Because She Was Not a Party in the LaRouche Litigation

As an initial matter, Plaintiff lacks standing to bring a claim under § 1985.  Allegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown the *litigant* was hampered in being able to present an effective case.  *David v. United States*, 820 F.2d 1038, 1040 (9th Cir. 1987) (since plaintiff was not a party to the actions in which she was intimidated, she can show no injury under § 1985(2)); *see also Rylewicz v. Beaton Servs., Ltd*.,

any person, or class of persons, to the equal protection of the laws."

888 F.2d 1175, 1180 (7th Cir. 1989) (witness whose testimony defendants allegedly attempted to influence, but who was not himself a party to the action, did not have standing to bring suit).

The plain language of § 1985 provides monetary relief only to a "party" and not a mere witness such as Plaintiff. Specifically, § 1985(3), the remedies section, states:

> In any case of conspiracy set forth in this section, if one or more persons engaged therein do … any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property … the *party* so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation against any one or more of the conspirators.

42 U.S.C. § 1985(3) (emphasis added).[5]  As the Seventh Circuit observed, "the specific language of [§ 1985(3)] … shows that Congress intended to provide a damage remedy only for litigants whose right to pursue a claim in federal court has been hindered by a conspiracy …. Otherwise the term 'witness' would have been contained in those remedial provisions." *Rylewicz*, 888 F.2d at 1180.  Because Plaintiff has not alleged she was a party to the LaRouche Litigation, she has no standing to pursue a claim under § 1985.

> **2.    Alternatively, Plaintiff's Complaint Fails to State a Claim Under § 1985(2) Because Plaintiff Has Not Sufficiently Alleged Facts to Support a Plausible Conspiracy Claim.**
>
> **a.    Plaintiff's Conspiracy Allegations Are Conclusory**

---

[5]    The Fourth Circuit has not opined on this issue and there is a circuit court split in authority.  Whereas the Seventh and Ninth Circuits have held that only a party to a federal proceeding has standing to maintain a suit under § 1985(2), the Third and Tenth Circuits have held that a mere witness also can have standing. *Heffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999) (holding that a witness or juror may be a "party" entitled to maintain an action under § 1985(2)); *Brever v. Rockwell Int'l Corp*., 40 F.3d 1119, 1125 (10th Cir. 1994) (holding that witnesses have standing under § 1985(2)).  The Supreme Court has not resolved this issue. *See Haddle v. Garrison*, 525 U.S. 121, 125 n.3, 119 S. Ct. 489, 142 L. Ed. 2d 502 (1998) ("We express no opinion regarding respondents' argument…that only litigants, and not witnesses, may bring § 1985(2) claims.").  Given the plain language of the statute, Defendants urge the Court to adopt the approach taken by the Seventh and Ninth Circuits.

Conspiracy to obstruct justice under 42 U.S.C. § 1985(2) occurs when "two or more persons conspire to injure [a] party or witness in [her] person or property" in retaliation for that person testifying in any court of the United States. 42 U.S.C. § 1985(2). An essential element in proving such a conspiracy is to show an agreement or a "'meeting of the minds by defendants to violate the claimant's constitutional rights.'" *Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000), *aff'd*, 28 Fed. Appx. 186 (4th Cir. 2002) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).

The standard for establishing a § 1985 conspiracy is a stringent one. The Fourth Circuit "has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy" and has rejected § 1985(2) claims "whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons*, 47 F.3d at 1377; *see also, Davis v. Hudgins*, 896 F. Supp. 561, 570-71 (E.D. Va. 1995), *aff'd*, 87 F.3d 1308 (4th Cir. 1996) (granting defendant's 12(b)(6) motion because plaintiff's allegation of conspiracy was too conclusory and failed to allege a meeting of the minds).

Thus, to state a claim for conspiracy, Plaintiff must allege sufficient facts to demonstrate that Defendants acted in concert with each other or with others. To satisfy this burden, Plaintiff must "plead facts that would reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Sanford v. Commonwealth*, 2009 U.S. Dist. LEXIS 76041, *7 (E.D. Va. Aug. 25, 2009) (citations omitted).[6] Moreover, the "plaintiff must further allege some details concerning the home and place at which the conspiracy came into being." *Id.,* *16, citing *Firestone v. Wiley*,

---

[6]    *Sanford* addressed a civil conspiracy claim under § 1983, which involves the same legal principles as a § 1985 conspiracy claim.

485 F. Supp. 2d 694, 703 (E.D. Va. 2007).  See also *Bay Tobacco, LLC v. Bell Quality Tobacco Prods, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (plaintiff must allege "more than mere conclusory language" when detailing the agreement among civil conspirators).

In support of her conspiracy claim, however, all that Plaintiff has done is make general, conclusory allegations that the Defendants conspired to injure her in her person and property because she testified against LaRouche in 1988.  There is nothing in the Complaint that indicates there was any agreement among the Defendants to take any actions to injure Plaintiff, much less that Defendants agreed to retaliate against her in order to punish her for testifying in the LaRouche Litigation over twenty years ago.

All that Plaintiff alleges is that between April 2008 and April 2009, LaRouche published several articles on the LaRouchePAC website and in the Executive Intelligence Review magazine which claimed that Plaintiff had testified falsely.  *See* Complaint at ¶¶ 14(v), (viii), (ix)-(xi), 15, 16 and 17.[7]  Plaintiff then asserts in a broad and conclusory fashion, that "defendants LaRouche acting individually, Barbara Boyd, acting individually and as an officer of defendant LaRouchePAC, defendant EIR, and the defendant LaRouchePAC, conspired together, in violation of Title 42 U.S.C. § 1985, to injure Molly Kronberg in her person or property on account of her having attended and having testified at the federal criminal trial of LaRouche." *Id*. at ¶ 19.[8]

---

[7]    Plaintiff's allegations as to publications in April and August, 2007 pertain to LaRouche's criticism of PRM and the assertion that members of the LaRouche organization should not "feel guilt over the suicide" of Plaintiff's husband, who was the head of PRM, because he felt betrayed by Plaintiff's contributions to President Bush's re-election campaign.  Complaint, ¶ 14(i)-(iii).  None of the statements made in 2007 refer to Plaintiff's being a witness in the LaRouche Litigation.

[8]    The only allegation specifically made against Boyd is that on February 20, 2009, she, along with LaRouche, composed and wrote an article/press release which was posted on the

These unsupported, conclusory assertions lack any factual underpinings regarding an agreement or meeting of the minds, much less the particulars of any concerted action to retaliate against Plaintiff for her testimony in the LaRouche Litigation.  Plaintiff's bald allegations simply do not satisfy the Fourth Circuit's stringent standard for establishing a § 1985 conspiracy and should be dismissed.  *Simmons*, 47 F.3d at 1377; *Brissett v. Paul*, 1998 U.S. App. LEXIS 6824, *10 (4th Cir. Apr. 6, 1998) (complaint properly dismissed where plaintiff "offered only unsupported, conclusory allegations that lacked a factual basis.").  See also *Sanford*, 2009 U.S. Dist. LEXIS 76041, *16 (a plaintiff must allege "more than mere conclusory language" when detailing the agreement among civil conspirators); *Bardes v. Magera*, 2009 U.S. Dist. LEXIS 91441, *35 (D.S.C. Aug. 10, 2009) (where plaintiff asserted that defendant "conspired with other defendants to violate his constitutional rights," claim was "wholly conclusory and is subject to dismissal on that ground alone"); *McHam v. North Carolina Mut. Life Ins. Co.,* 2007 U.S. Dist. LEXIS 42582, *12-13 (M.D.N.C. June 11, 2007) (plaintiff's conclusory allegations fail to satisfy Fourth Circuit's standards for establishing § 1985 conspiracies), *aff'd,* 250 Fed. Appx. 545 (4th Cir. 2007).

Indeed, Plaintiff's allegations are nothing more than the "unadorned, the-defendant-unlawfully-harmed-me accusation," which the Supreme Court in *Iqbal* held to be insufficient to state a claim.  129 S. Ct. at 1949.  *See also Twombly*, 550 U.S. at 570 (when considering a Rule 12(b)(6) motion to dismiss, the court should not entertain legal conclusions devoid of any factual support).

b.    **Plaintiff's Allegations of Conspiracy Are Not Plausible On Their Face**

LaRouchePAC website which accused Plaintiff of committing perjury during the LaRouche Litigation.  *See* Complaint at ¶ 14(vii).

Not only are Plaintiff's conspiracy allegations unsupported and conclusory, they do not plausibly support Plaintiff's theory of retaliation as they must under *Iqbal* and *Twombly*. Instead, the allegations run directly counter to the plausible nature of her § 1985 claim.

In particular, the remoteness in time between the event in 1988 that allegedly motivated Defendants to conspire against Plaintiff, i.e., the LaRouche Litigation, and the purported conspiratorial actions 20 years later make Plaintiff's conspiracy claim implausible on its face. It simply is not plausible that nearly twenty years after the LaRouche Litigation, Defendants suddenly decided they would conspire to punish Plaintiff for her acts twenty years earlier. *See, e.g., Ansell v. Green Acres Contr. Co., Inc.*, 347 F.3d 515, 524 (3rd Cir. 2003) ("There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent."); *see also Plampin v. United States Fidelity & Guaranty*, 463 F. Supp. 972, 974 (D.S.C. 1978) (finding that the traffic arrest of plaintiff almost a year after his fight with one of the defendant-deputy sheriffs' son was too remote in time to fit into plaintiff's theory that all the incidents were part of a conspiracy instigated by defendant deputy sheriff).

Notably, Plaintiff continued to be active in the LaRouche political cause for many years after the LaRouche Litigation and, in fact, did not sever her relationship with LaRouche until the summer of 2007 after her husband's death. Complaint, ¶ 5. Moreover, Plaintiff's husband continued to work for LaRouche until April 2007. *Id.*, ¶ 14(i). There is no allegation that Defendants took any conspiratorial act against Plaintiff between 1988 and 2007.

Accordingly, because Plaintiff's Complaint fails to allege facts sufficient to state a plausible theory of recovery for § 1985 retaliation (even assuming that as a witness she has standing to pursue such a claim), her Complaint must be dismissed under the standards

enunciated by the Supreme Court in *Twombly*, 127 S. Ct. 1955, 1974 and *Iqbal*, 129 S.Ct. 1937, 1949.

### 3.     Additionally, Count I Is Barred by the Doctrine of Intracorporate Immunity.

In this case, Plaintiff has named as defendants LaRouche, his political action committee (LaRouchePAC), one of the principal officers of LaRouchePac (Boyd), and EIR News Service, Inc., which publishes the news magazine identified with LaRouche, which LaRouche founded and where he serves as Chairman of the Board.  To withstand a motion to dismiss, a plaintiff alleging a violation of § 1985(2) must allege a "conspiracy between two or more persons."  42 U.S.C. § 1985(2).  Here, Plaintiff cannot state a claim for conspiracy under § 1985(2) because any such claim clearly is precluded by the doctrine of intracorporate immunity.

The intracorporate immunity doctrine recognizes that because a corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy.[9]  *Lewin v. Cooke*, 95 F. Supp. 2d 513, 524 (E.D. Va. 2000) (citing *Bank Realty, Inc. v. Thomas*, 1991 U.S. App. LEXIS 11793 at *11-12 (4th Cir. 1991)(unpublished) (additional citations omitted)).  In other words, an alleged conspiracy between an employer and its employees acting within the scope of their employment, is "a conspiracy of one, a legal impossibility."  *Lewin*, 95 F. Supp. 2d at 525 (citing *Douty v. Irwin Mortg. Corp*., 70 F. Supp. 2d 626, 632 (E.D. Va. 1999)); *see also Softwise, Inc. v. Goodrich*, 63 Va. Cir. 575, 577-78 (Roanoke 2004) ("the corporation is an artificial entity that only acts through its agents, directors, and employees").

If an employee acts in the scope of her employment and, thus, acts as an agent of the corporation, then only a single entity exists: the corporation.  The Complaint alleges that Boyd

---

[9]     The Fourth Circuit has applied the intracorporate immunity doctrine to § 1985 conspiracy claims.  *See, e.g., Buschi v. Kirven*, 775 F.2d 1240, 1251-52 (4th Cir. 1985).  See also *Lavin*, 95 F. Supp. at 525 (applying intracorporate immunity to § 1985 claim).

was the principal officer of co-defendant LaRouchePAC at the time the allegedly defamatory statements were published.  Complaint, ¶ 8.   Plaintiff may not avoid application of the intracorporate immunity doctrine by arguing that the doctrine should not apply because Plaintiff is suing Boyd individually as well as an officer of LaRouchePAC.  Complaint, ¶ 19.  The Fourth Circuit has made clear that "the immunity granted under the doctrine to the agents and the corporation [is not] destroyed because the agents are sued individually.  'Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation.'"  *Buschi*, 775 F.2d at 1252.  Plaintiff's Complaint makes no allegations suggesting that Boyd was acting outside of her capacity as an officer of LaRouchePAC at the time of the publication of the allegedly defamatory remarks of which Plaintiff complains.  Thus, as an agent of LaRouchePAC, she may not be a separate party to any purported conspiracy.

Just as an employee cannot conspire with its employer, it is also well-established that a corporation cannot conspire with its wholly-owned subsidiary.  *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp 1169, 1174 (E.D. Va. 1995).  Moreover, the Fourth Circuit takes a "functional approach" to the question of intracorporate immunity and has held that two legally separate entities, such as LaRouchePAC and EIR, cannot conspire if they share a "similar unity of interest."  *Id.* at 1175 (citing *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 703 (4th Cir. 1991)).   As Plaintiff's Complaint states, Lyndon LaRouche is the leader of the political movement which LaRouchePAC and EIR exist to support.  LaRouche is the founder of LaRouchePAC.  Complaint, ¶¶ 6-7.  He is also the Chairman of the Board of Directors of EIR, as well as the founding editor and a contributing editor of its magazine, *Executive Intelligence*

*Review*. Complaint, ¶ 9.  As such, LaRouche, LaRouchePAC and EIR all share the requisite

unity of interest for the intracorporate immunity doctrine to apply.

In sum, Plaintiff's conspiracy claim fails on the independent ground that the entities and

its officers named as defendants are legally incapable of conspiring with one another.

### 4. Defendants' Alleged Wrongful Conduct Predating August 21, 2007 Are Time-Barred.

The Reconstruction Civil Rights Acts, which include 42 U.S.C. § 1985, do not

specifically provide a statute of limitations during which time claims must be brought.  See

*McCausland v. Mason County Bd. of Edu.*, 649 F. 2d 278, 279 (4th Cir. 1981).  Therefore, the

federal courts borrow the appropriate limitations period for personal injury claims from the state

in which the claims arose.  See *Al-Ami'n v. Allen,* 2006 U.S. Dist. LEXIS 96073, *7 (E.D. Va.

Dec. 8, 2006) (citing, *Wilson v. Garcia,* 471 U.S. 261, 275-276 (1985)).[10]  Virginia's general

statute of limitations for personal injury claims is two years.  See Va. Code. Ann. § 8.01-243(A).

Plaintiff filed her lawsuit on August 21, 2009.  Accordingly, to the extent that Plaintiff bases any

of her claims upon actions of the Defendants that occurred more than two years prior to this date,

i.e., August 21, 2007, those claims are time-barred.[11]

---

[10]    28 U.S.C. § 1658 provides a catch-all four year statute of limitations for causes of action
that arise under acts of Congress.  However, that statutory provision applies only to laws that
were enacted after December 1, 1990.  Because § 1985 is a Reconstruction Era civil rights statute
and has not been amended after December 1, 1990, § 1658 does not apply.

[11]    Plaintiff may not pursue claims for time-barred actions based upon a continuing violation
theory since "the continuing violation theory has never been applied in the § 1985 context."
*Klippel v. Bureau of Alcohol, Tobacco and Firearms,* 1996 U.S. Dist. LEXIS 14352, *17 (N.D.
Ill. Sept. 27, 1996).  This is because the filing deadline for a civil rights conspiracy claim "runs
from each overt act causing damage" and "for each act causing injury, a claimant must seek
redress within the prescribed limitations period."  *Wells v. Rockefeller,* 728 F.3d 209, 217 (3d
Cir. 1985).

Although the statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c) and usually not an appropriate grounds for dismissal, an exception is made in cases such as this where dismissal clearly is proper based upon the face of the complaint. See *Brooks v. City of Winston-Salem,* 85 F. 3d 178, 181 (4th Cir. 1996); see also 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

In this case, Plaintiff's Complaint alleges purported wrongful acts of Defendants that occurred more than two years prior to the filing of her Complaint. For example, in Count I of her Complaint alleging a § 1985 conspiracy, Plaintiff alleges that she suffered injuries as a result of Defendants' "harass[ment of] her husband, subjecting him to severe emotional distress, urging him to commit suicide, which he did." Complaint, ¶ 20. Plaintiff further alleges that all of these actions occurred in April, 2007. Complaint, ¶ 14(i). Because, on the face of the Complaint, these alleged acts occurred more than two years before Plaintiff's lawsuit was filed, any purported injuries Plaintiff suffered due to those actions are time-barred. Further, Count I of Plaintiff's Complaint claims that she suffered injury because the Defendants "wrote and published, or assisted in the writing and publishing of, or caused to be published, . . . false, malicious, and harassing statements, about Molly Kronberg," as referenced in the Complaint. *Id.* Many of these purported statements were made before August 21, 2007 (see Complaint, ¶¶ 14(i)-(iii)), and they are time-barred as well.

Accordingly, to the extent that Plaintiff predicates her § 1985 cause of action upon time-barred acts, Plaintiff's claims should be dismissed. See *Al-Ami'n,* 2006 U.S. Dist. LEXIS 96073,

*7 (dismissing plaintiff's § 1983 claims where it was "clear from the face of the complaint that the events of which plaintiff complains occurred more than two years before this action was brought.").

### C.    Count II (Libel *Per se*) Should Be Dismissed

### 1.    If the Court Dismisses Count I, There Is No Jurisdiction Over Plaintiff's State Law Claim

In the event this Court dismisses Plaintiff's § 1985 claim in Count I, it also should dismiss Plaintiff's remaining state law claim for libel *per se* in Count II .  Because there is no diversity jurisdiction, the court's jurisdiction over this matter is premised solely on federal question jurisdiction in Count I.  If Count I is dismissed, there is no basis for this Court to retain supplemental jurisdiction over Count II.  See *Taylor v. Waters,* 81 F.3d 429, 437 (4th Cir. 1996) (citing 28 U.S.C.A. § 1367 practice commentary, explaining that the decision to decline to exercise supplemental jurisdiction over state-law causes of action after dismissal of all claims over which district court has original jurisdiction under § 1367(c)(3) will "hinge on the moment within the litigation when the dismissal of the touchtone claim takes place, and on the other surrounding circumstances"); see also *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 91966) ("certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Clark v. Brown,* 861 F.2d 66, 68 (4th Cir. 1988) (directing dismissal of state-law claims on remand after holding district court erred in failing to grant summary judgment to defendant in § 1983 claim on the basis of qualified immunity).

### 2.    Plaintiff's Libel *Per Se* Claim Is Pled Improperly

Even if this court were to retain supplemental jurisdiction over Count II of the Complaint, Plaintiff's libel *per se* claim is defective under Virginia law.  Many of the alleged defamatory statements in Plaintiff's Complaint on their face do not constitute libel *per se* and,

therefore, should be dismissed.  Other allegations in Count II fail to satisfy the requirements of

specificity for pleading a defamation claim under Virginia law and, hence, are fatally defective.

Finally, in Count II, Plaintiff appears to have attempted to plead a claim for intentional infliction

of emotional distress.  This is improper under Fed. R. Civ. P. 8, which requires clear and concise

pleading, and in any event, Plaintiff's allegations fail to satisfy the stringent common law

standards for pleading a viable intentional infliction cause of action.

### a.    Law of Pleading a Claim for Libel

In order to state a claim for defamation under Virginia law, a plaintiff must set forth the

exact words attributable to the defendant which the plaintiff claims are defamatory.   "Words

equivalent or of similar importance are not sufficient." *Federal Land Bank v. Birchfield*, 173 Va.

200, 215, 3 S.E. 2d 405 (1939).  The reason for this rule is clear.  In order to defend a defamation

lawsuit, which by its very nature is founded upon particular words being published, the

defendant is entitled to know what words plaintiff claims are defamatory.

### b.    Plaintiff's Complaint Is Defective

#### 1.    On Their Face, Many of the Statements Plaintiff Has Identified Do Not Constitute Libel *Per Se*

In Count II of her Complaint, Plaintiff generally alleges that "each of the statements

made in Paragraph 14, sub-paragraphs (ii) – (xii), and in Paragraphs 15, 16, and 17, was false

when made, was published in the manner described in this Complaint and was known by the

defendants to be false."  Complaint, ¶ 22.  However, many of these paragraphs and sub-

paragraphs of the Complaint referenced by Plaintiff, on their face, fail to sufficiently set forth

statements that would give rise to a libel *per se* claim under Virginia law.

Libel *per se* in Virginia is limited to defamatory words that impute to a person (1) the

commission of a crime involving moral turpitude for which the party, if true, may be indicted or

punished; (2) the infection with some contagious disease which, if true, would exclude the person from society; (3) the unfitness to perform the duties of an office or employment for profit; and (3) unfitness in his or her business or profession.  See *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.F. 2d 588, 591 (1954).

In her Complaint, Plaintiff asserts that each of the statements of which she complains are "defamatory *per se*" because they falsely accuse her of "the commission of a crime,"  i.e., perjury.  Complaint, ¶ 22.  Accordingly, any libel claim that Plaintiff may seek to make based upon allegations that do not rise to the level of libel *per se* should be dismissed.  The court may do so on a motion to dismiss since the determination of whether a statement is actionable defamation is a matter of law.  See *Chapin v. Greve*, 787 F. Supp. 557 (E.D. Va. 1992), *aff'd,* 993 F.2d 1087 (4th Cir. 1993).  See also *Yeagle v. Collegiate Times*, 255 Va. 293, 497 S.E. 2d 136 (1998).

Those paragraphs and sub-paragraphs of the Complaint upon which Plaintiff seeks to predicate her claim of libel *per se*, but which are fatally defective, are as follows:

- ¶ 14(ii) -- Plaintiff alleges that on August 18, 2007, LaRouche published an email entitled "Bush-League Molly" purportedly reminding her of the suicide of her husband, asserting that he killed himself because of her, that LaRouche followers "had no reason to feel guilt over the suicide," and that the reason for the suicide was that Plaintiff's husband felt betrayed because Plaintiff had given financial support to President Bush in the 2004 election. On its face, there is nothing defamatory about Defendant LaRouche's alleged email and it certainly does not constitute libel *per se*, as alleged by Plaintiff.

- ¶ 14 (iii) --  Plaintiff complains of an August 19, 2007 Morning Briefing which allegedly reiterated assertions about Plaintiff's contributions to President Bush's campaign and stated that at the time of these contributions, Plaintiff's husband and other members of the LaRouche movement were engaged in an "all-out war to prevent the re-election of Bush-Cheney."  Again, the purported statements on their face do not constitute libel *per se*.

19

- ¶ 14(iv) -- Plaintiff complains of an alleged April 14, 2008 Daily Briefing in which LaRouche is quoted as saying that Plaintiff was a "fraudulent witness" and that Plaintiff's husband "had committed suicide because his wife was on the other side."  Although in Paragraph 22 of her Complaint, Plaintiff claims that the statements upon which she is basing her libel *per se* claim falsely accuse her of the commission of a crime, Plaintiff's allegations in Paragraph 14(iv) do not do so.  A meaning of "fraudulent" is "done or obtained by fraud."  *New World Dictionary of the American Language* (2d Ed. 1980), p. 555.  Thus, the term "fraudulent witness" may be construed as a witness who was obtained by fraud, not a witness who committed a crime.

- ¶ 14(vi) -- Plaintiff makes various conclusory allegations such as the assertion that LaRouche maliciously accused Plaintiff of criminal wrongdoing and asserted that she criminally uttered false checks with the intent to frame LaRouche and that she lied under oath during the federal trial.  But, not withstanding Plaintiff's characterizations, she fails to set forth the exact language of which she complains and which she must do in order to properly state a claim for libel *per se*.  Merely making conclusory assertions about the contents of various writings is not sufficient.

- ¶ 14(vii) -- Plaintiff asserts that a LaRouchePAC publication in February, 2009 entitled "The Crime of Marielle (Molly) Kronberg Defeats LaRouche's HBPA in South Dakota" falsely accused her of committing perjury.  However, Plaintiff has failed to set forth in her Complaint any purported language in the publication that is sufficient to constitute libel *per se*.  The words "the crime of Marielle (Molly) Kronberg" may be interpreted in a variety of fashions.  In fact, the definition of "crime" includes "something regrettable or deplorable; shame" as in "it's a crime you didn't finish school."  *New World Dictionary, supra,* at 335.

- ¶ 15 -- Plaintiff complains about a February, 2009 EIR article entitled "Reversing a Crime," which purportedly states that "in 1979 and 1980, [Plaintiff] participated in a concocted scheme to arbitrarily impute income to LaRouche for purposes of appearances during LaRouche's 1980 presidential campaign" and, additionally, refers to Plaintiff's testimony at the LaRouche trial as a "frame up of Lyndon LaRouche." To state that Plaintiff participated in a "concocted scheme," however, does not constitute libel *per se*.  To "concoct" is defined as "to devise, invent, or plan," and "scheme" is defined as "a carefully arranged and systematic plan of action for attaining some object, or end."  *New World Dictionary*, *supra*, at 294, 1273. Neither of these words taken separately nor together assert that Plaintiff committed a crime.

Similarly, a "frame-up" may mean "a surreptitious" or "underhanded arrangement." *Id.* at 553. On its face, the term does not mean that Plaintiff committed a crime involving moral turpitude as it must to constitute libel *per se*.

Because the above paragraphs from Plaintiff's Complaint fail to sufficiently allege a claim against Defendants for libel *per se*, Defendants respectfully submit that this Court should dismiss Plaintiff's libel *per se* claims to the extent that they are predicated upon the allegations in these paragraphs. See *Federal Land Bank*, 173 Va. at 213-214 (in an action based on defamatory statements, where defamatory statements are so intermingled with other allegations that they confuse the issue, court should strike superfluous matters).

### 2.    Plaintiff's Defamation Claims Based Upon Statements in 2007 and 2008 Are Time Barred.

The statute of limitations in Virginia for libel *per se* is one year. Va. Code Ann. § 8.01-248. The limitations period may not be extended merely because Plaintiff has alleged a conspiracy in her Complaint. See 12A *Michie's Juris.*, Libel & Slander, §45, p. 182.

Because Plaintiff filed her lawsuit on August 21, 2009, any purported defamatory statements published by the Defendants prior to August 21, 2008 are not actionable. Plaintiff's Complaint, however, asserts claims for libel *per se* pertaining to statements allegedly made well before that date. These statements are set forth in Paragraph 14(i)-(iv). Without question, any claims that Plaintiff may assert based upon statements referenced in those sub-paragraphs are time-barred and should be dismissed.[12]

---

[12]    Plaintiff may not attempt to avoid this result by contending that the time-barred statements were part of a continuing defamation of her and, hence, that the statute should not begin to run until the purported defamatory statements ceased. This court has recognized that "repeated defamations do not constitute a continuing tort; rather, as courts have uniformly recognized, each separate defamatory statement itself constitutes a separate and distinct cause of action." *Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D.Va. 1999).

### 3. Plaintiff Should Be Required to State With Specificity Her Remaining Claims for Libel *Per Se*

To the extent that Plaintiff has any remaining timely claims of libel *per se*, Plaintiff should be required to state with specificity the exact words that allegedly were published so that Defendants may know what they are being charged with and what they will need to defend against. Not only is this required by the law, but it is only fair and equitable. Defendants should not be required to guess as to the basis for Plaintiff's claims.

### C. Plaintiff's Libel *Per Se* Claim Improperly Seeks to Assert a Claim for Intentional Infliction of Emotional Distress, Which Is Not Well Pled

As a final matter, in Paragraph 24 of her Complaint, Plaintiff asserts that Defendants' purported statements about her husband's suicide were made to "falsely blame her for causing his suicide, knowing that this was false and knowing how dearly she loved him, how badly she missed him, and how this would therefore inflict upon her severe emotional distress" and that they were made "for the purpose of causing Molly Kronberg severe emotional distress and which in fact did cause her such emotional distress." Complaint, ¶ 24.

These allegations pertaining to the suicide of Plaintiff's husband do not pertain to any claim of purported libel *per se* as to her. Instead, they appear to be a backdoor attempt by Plaintiff to recover on a claim for intentional infliction of emotional distress. Put simply, Plaintiff should not be allowed to make an end run around the strict pleading rules for an intentional infliction of emotional distress cause of action.

The tort of intentional infliction of emotional distress "is not favored in Virginia" and the courts have set a high bar for pleading an intentional infliction claim. *Lewis v. Gupta*, 54 F. Supp. 2d 611, 621 (E.D. Va. 991). See also 18 *Michie's Juris.*, Torts, § 2, p. 559 ("Virginia courts do not favor actions for intentional infliction of emotional distress"). To state a claim for

intentional infliction of emotional distress, a plaintiff must allege sufficient facts to show that (1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) a causal connection existed between the conduct and the emotional distress; and (4) the emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342, 210 S.E. 2d 145 (1974).  See also *Lewis v. Gupta*, 54 F. Supp. 2d 611 (E.D. Va. 1999).  As emphasized by the Virginia Supreme Court, a plaintiff must allege each of these elements with the requisite degree of specificity.  *Jordan v. Shands*, 255 Va. 492, 499, 500 S.E. 2d 215, 219 (1998); *Ely v. Whitlock*, 238 Va. 670, 677, 385 S.E. 2d 893, 897 (1989).  In particular, in order to satisfy the second element of a claim for intentional infliction, the conduct alleged by the plaintiff must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  *Russo v. White*, 241 Va. 23, 27, 400 S.E. 2d 160 (1991).

The statements that Plaintiff contends constitute libel *per se* clearly fail to meet these high standards required for adequately pleading an intentional infliction claim.  See *Lewis*, 54 F. Supp. 2d at 620 (granting motion to dismiss plaintiff's intentional infliction claim where defendants contended that plaintiff failed to plead elements of claim with requisite specificity).  Accordingly, this Court should enter an order specifically barring Plaintiff from seeking to pursue damages in this case for any intentional infliction of emotional distress.

## IV.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to dismiss the First Amended Complaint with prejudice.

Respectfully submitted,

All Defendants
By Counsel

_____/s/_____
Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P. O. Box 25
Middleburg, Virginia  20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Lyndon LaRouche and*
*EIR News Services, Inc.*

_____/s/_____
Bernard J. DiMuro, Esq. (VSB # 18784)
Hillary J. Collyer, Esq. (VSB #50952)
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
Email: bdimuro@dimuro.com;
hcollyer@dimuro.com
*Counsel for Defendants Barbara Boyd and Lyndon*
*LaRouche Political Action Committee, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October __, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

John Bond, Esq.
LAW OFFICE OF JOHN BOND, PLLC
10617 Jones Street, Suite 101
Fairfax, Virginia 22030
Phone: (703) 359-7116
Fax: (703) 359-7120
Email: jbond@jbondlaw.com
*Counsel for Plaintiff*

John J.E. Markham, II, Esq.
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Phone: (617) 523-6329
Fax: (617) 742-8604
Email: jmarkham@markhamread.com
*Of Counsel for Plaintiff: Admitted pro hac vice*

_____/s/_____
Bernard J. DiMuro (VSB # 18784)
Hillary J. Collyer, Esq. (VSB #50952)
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
Email: bdimuro@dimuro.com;
hcollyer@dimuro.com
*Counsel for Defendants Barbara Boyd and Lyndon LaRouche Political Action Committee, Inc.*