## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| MARIELLE ("MOLLY") KRONBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -v- ) | |
| ) | Civil No. 1:09-cv-00947-AJT-TRJ |
| LYNDON LAROUCHE, et al, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF MOLLY KRONBERG'S OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION -- STANDARD OF REVIEW

We agree with defendants (Def. Memo 5) that 12(b)(6) motions should be denied if

plaintiff's claims "are supported by any set of facts consistent with the allegations of the

complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561, 127 Sup. Ct. 1955, 167 L.Ed.2d

929 (2007). And:

> "[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded
> allegations in the plaintiff's complaint as true and drawing all reasonable factual
> inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff
> cannot prove any set of facts in support of his claim entitling him to relief." [*citation
> omitted*]. In considering the motion to dismiss, a court may only examine the complaint,
> exhibits attached to the complaint, matters of public record, and judicially noted facts.

*Bartlett v. Frederick County, Maryland*, 246 Fed.Appx. 201, 205 (4th Cir. 2007).

The Amended Complaint here is more than adequate under that standard. Ironically, for

defendants, the bulk of the complaint is specific quotations of the defendants themselves, as they

acted out the conspiracy to injure Molly Kronberg by repeatedly composing, editing and then

posting a series of writings. These writings told Molly Kronberg's small work, home, and

Church communities that Molly Kronberg criminally framed LaRouche, then perjured herself at

his trial in a way that caused him and other innocent people to suffer a federal prison sentence

and caused her own husband to commit suicide out of his shame for her criminal wrongdoings.

While the LaRouche criminal trial was long ago (1988), *it was defendants* who, in 2007, chose to

resurrect her testimony and brand it as perjury. *They* chose to do so near the time of her

husband's death (in 2007), by viciously trumpeting that his knowledge of her supposed perjured

testimony had driven him to suicide. Therefore, far from the complaint being "implausible"

because of lapsed time (Def. Memo 6), the defendants chose the timing, and their words and

actions, as they wrote and published them to attack Molly Kronberg, show clearly that they were

attacking her because of testimony in the federal criminal trial. Their words, standing alone,

show that they wanted to injure her because she had testified.

## II.    STATEMENT OF ALLEGATIONS

The allegations of the conspiracy to injure Molly Kronberg are summarized below. To

begin with, the Amended Complaint (¶ 1) alleges that:

> Each of the defendants, and others, (i) conspired to injure Molly Kronberg
> in her person and property because she testified against Lyndon LaRouche in a
> federal criminal trial in this District at which he was convicted of defrauding
> elderly citizens of millions of dollars and of a conspiracy to defraud the
> government of the United States, and (ii) defamed and libeled Molly Kronberg.
> Defendants maliciously, and with conscious disregard of her rights, repeatedly
> published knowingly false statements that she had framed LaRouche and perjured
> herself at LaRouche's trial to falsely cause his conviction, perjury which,
> defendants also falsely stated, caused the death of her beloved husband, Kenneth
> Kronberg, to whom she had been married and devoted for 34 years, and who
> tragically committed suicide in 2007 after being viciously harassed by defendants.

This is harsh stuff, suffered as it was by the now-widowed Molly Kronberg in her small

community circle, which is alleged at Amended Complaint, ¶ 5:

> Plaintiff Molly Kronberg is a longtime resident of Leesburg, Virginia,
> within this District. She came to Leesburg with her beloved husband, Kenneth

Kronberg, in 1985, and, since she and Ken arrived here, Leesburg has been her home. It is where she worships at her church, has family, friends, neighbors, and, where, in nearby Vienna, Virginia, also within this District, she works and enjoys good relations with her co-workers.

Defendants briefly argue that Molly Kronberg fails to support her "seemingly implausible legal conclusions with any facts," (Def Memo. 6), yet the Amended Complaint is factually quite specific. It alleges the respective roles of the four named conspirators (Amended Complaint ¶¶ 6-9), alleges that these defendants acted "with other persons not named herein" (Amended Complaint ¶14), and then alleges that, together, they all:

> conspired to injure plaintiff Molly Kronberg in her person and property, in violation of title 42 U.S.C. §1985, by reason of the testimony she gave as a witness at the above-referenced trial where LaRouche was convicted of fraud.

Amended Complaint ¶¶14 and 21.

Next, the Amended Complaint, ¶14 -17 specifically pleads many, but not all,[1] of the acts taken in furtherance of this conspiracy, and does so by quoting defendants' own words and alleges that they combined to write them, edit them and then place them in various publications:

> 14.    In furtherance of this conspiracy and in order to accomplish the object thereof, namely, injuring Molly Kronberg in her person and property because she testified at the 1988 trial, defendants intentionally and maliciously did the following, among other actions, *by composing, writing, editing and/or publishing, or assisting each other in composing, writing, editing and/or publishing,* the following writings, among others:

> (v)    On April 26, 2009 in a Morning Briefing . . .:

> . . . Molly had been, as we all knew –those of us who knew anything about this, knew *that none of us would have gone to prison, not in that trial, not in Alexandria, except for Molly. . . . Molly gave the false testimony* without which the trial could not have occurred in Alexandria. . . . .

> *When this woman . . . sent a bunch of us to prison directly and deliberately . . . She lied! It was only her lies that got us imprisoned.* If she hadn't had that lie, nobody would have gone to prison in that trial.

---

[1] Amended Complaint ¶14 states: "In furtherance of this conspiracy...defendants intentionally and maliciously did the following, among other actions..."

*Now, you've got a situation, where he [Ken Kronberg, Molly Kronberg's husband] kills himself, because he was living with that witch: Who's been evil all along! Her behavior had never been good. She's never been honest. And then, he commits suicide, and these bums try to blame me for it! He was driven – there was no reason for the suicide, there was no excuse for it. But there's an understanding of the oppression that he felt by being married to that bitch.* . . . .

\* \* \*

(viii)    In a LaRouche PAC publication publicly posted on the website on February 26, 2009, LaRouche wrote or caused to be written . . . "Va. Prosecutors obtained perjured *testimony from one crucial witness, Molly Kronberg,*"

(ix)    In a LaRouchePAC publication publicly posted on the website on March 25, 2009, LaRouche wrote or caused to be written . . . *"one Marielle 'Molly' Kronberg ... established herself as a willing liar more than twenty years ago when, under penalty of prison for her own misconduct, she provided false testimony against LaRouche* in the infamous criminal trial . . .

16.    The March 6, 2009 issue of *EIR* [defendant Executive Intelligence Review] published that "*Molly Kronberg, whose false statements under oath were the basis for the illegal conviction of LaRouche on false allegations of tax fraud conspiracy. LaRouche was sentenced to 15 years in Federal prison on the fabricated charges, and colleagues were sentenced to 3-5 years, all on the basis of the fraudulent Kronberg testimony,* which centered on her own criminal uttering of a false check."

17.    In the April 10, 2009 issue of *EIR* [defendant Executive Intelligence Review] on pages 36-37 thereof . . . *EIR* . . . stated that . . . . *One Marielle Kronberg presented false testimony* . . .."

The Amended Complaint (¶20) next alleges the joint action to compose, edit, and publish these writings and their injury to plaintiff:

In furtherance of this conspiracy and in order to accomplish its object, namely, the injury of Molly Kronberg because she appeared and testified in the criminal trial of Lyndon LaRouche, defendants harassed her husband, subjecting him to severe emotional distress, urging him to commit suicide, which he did, and wrote and published, or assisted in the writing and publishing of, or caused to be published, the above-referenced false, malicious, and harassing statements, about Molly Kronberg, as well as undertaking other actions, all in order to injure her in her person and property, and they have in fact so injured her in her person and property in the manner and to the extent to be proved at trial.

4

Other allegations show specific instances of how the above conspiracy worked. LaRouche, who is not an officer, director or employee of LaRouchePAC, is alleged to have written or caused to have been written he following screed against Molly Kronberg which LaRouchePAC published to its website:

> In a LaRouchePAC publication publicly posted on the website on March 25, 2009, LaRouche wrote or caused to be written: "one Marielle 'Molly' Kronberg ... established herself as a willing liar more than twenty years ago when, under penalty of prison for her own misconduct, she provided false testimony against LaRouche in the infamous criminal trial . . ."

In the face of all of the above, it is remarkably incorrect for the defendants to tell this court that "these unsupported, conclusory assertions lack any factual underpinnings." (Def. Mem. 11). Nor do the specific allegations become "implausible" because of the supposed "remoteness in time." (Def. Mem. 12) between the trial testimony of Molly Kronberg (1988) and the onset (in 2007 through 2009) of the vicious attacks against her because of that testimony. The words used by defendants and quoted above make plain the direct link between their attacks and her testimony.[2]

## III. ARGUMENT

## A.    A Federal Witness Has Standing Under 42 U.S.C. §1985(2)

Contrary to defendants citation of old law, witnesses, as well as named parties, have standing to bring a claim under §1985. We note that defendants cite the oldest two of all the cases on this point for their proposition (Def. Mem. 7-8) that the only a litigant has standing to

---

[2]    We note in this regard that defendants do not plead any statute of limitations as a bar to those libelous statements occurring within the two year period preceding the filing of the Complaint on August 21, 2009. That is obviously because the statute of limitations runs from the time of the injury to her by the attacks made within two years of the date on which she files her complaint, not from the time lapse between the testimony she gave at the criminal trial and the date on which defendants started their attacks. As to the defendants' specific assertions that some of the attacks are time-barred (Def. Mem. 15-17) We address those specifically at p. 17-19 below.

bring a §1985 claim.[3]  The majority of the Circuits thus far ruling (the 3rd, 5th (dicta), 10th and

11th), which rulings are also the most recent case law on this issue,  support our proposition that

Kronberg, as a witness in federal litigation, has standing to bring a claim under §1985 for the

injury she has suffered from the defendants who took after her because she testified.  *See, Chavis*

*v. Clayton County Sch. Dist.,* 300 F.3d 1288, 1292 (11th Cir.2002), *Heffernan v. Hunter,* 189

F.3d 405, 409-10 (3d Cir.1999), and *Brever v. Rockwell Int'l Corp.,* 40 F.3d 1119, 1125 n. 7

(10th Cir.1994) (all holding that non-party witnesses have standing).

      In *Brever,* the lower court dismissed plaintiff's 1985(2) suit in which she had alleged that

her former employer and other individuals conspired to deter her from testifying before a grand

jury and retaliated against her after she testified. The Tenth Circuit reversed:

> Unlike defendants, we do not read the word "party" so literally as to mean "named party
> to an action," especially where the preceding portion of the statute specifically identifies
> witnesses as protected persons.

*Id.* at 1125 fn. 7.  Subsequently, the Third Circuit reached the same conclusion after examining

the legislative history of the statue, examining section 1985's language as derived from the Civil

Rights Act of 1871, ch. 22, § 2, 17 Stat. 13 (codified pursuant to the Act of June 20, 1874, ch.

333, 18 Stat. 113-14), and from the Conspiracy Act of 1861, ch. 33, 12 Stat. 284:

> To properly interpret section 1985, it is necessary to compare the original and
> codified texts [1871 and 1861] . . . . after patient parsing of the text, it is clear
> enough that Congress' intent was to extend protection to witnesses and jurors as
> well as to parties. The word "persons" as used in the 1871 version accomplished
> that result and the codified text need not be read as inconsistent with the original.
> The word "party" may well have been, in the codifiers' minds, simply a synonym
> for "person" or "individual."
>
> We reach the same conclusion even if we do not look to the original text. The
> codified remedy section states that if one or more conspirators "do ... any act in
> furtherance of the ... conspiracy, *whereby another is injured* in his person or
> property, ..., *the party so injured or deprived* may have an action for the recovery

---

[3]     Defendants cite *Rylewicz v. Beaton Servs., Ltd.,* 888 F.2d 1175, 1180 (7th Cir. 1989) and *David v. United States,* 820 F.2d 1038, 1040 (9th Cir. 1987), each now 20 years old.

of damages." 42 U.S.C. § 1985(3) (emphasis added). In this clause, "the party so injured" refers back to the phrase "whereby another is injured." The phrasing and context persuade us that the term "party" is not meant to limit the more general term "another." Thus, the meaning of "another" in the section 1985(2) context is not defined by section 1985(3)'s reference to "party," but rather by section 1985(2)'s reference to parties, witnesses, and jurors. *See Brever*, 40 F.3d at 1125-26 n. 7. This reading is in accord with our caution in *Brawer* that "it could hardly be argued that Congress gave [the codifiers] a carte blanche right of amendment." 535 F.2d at 838 n. 16.

We therefore find ourselves in accord with *Brever* and hold that a witness or juror may be a "party" entitled to maintain an action under section 1985(2).

*Heffernan, supra*, 189 F.3d at 410-411.[4]

Defendants in this case ask this Court to read the term "party" in a vacuum, extracted from the sentence in which Congress placed it, and then simply to rule that because the term "party," in some contexts but not others, means a named litigant, the term should always mean that regardless of context. This would be at odds with long-accepted rules of construction, easily and correctly employed in the just quoted language from *Heffernan*.

**B.     Kronberg's Complaint Sufficiently Alleges a Conspiracy Claim**

It is clear that "whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). We refer back to the allegations we quoted at Part II, *supra* , pp. 2-5 under "STATEMENT OF ALLEGATIONS" above. They plead the interrelations between the parties, allege that they assisted each other in the composition, editing, and publishing in various journals of the attack pieces on Molly Kronberg, iterate the

---

[4]     *See also, Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004)(Though *Kinney* did not decide the statutory standing question directly, it supported the majority rule by finding that intimidation of an expert witness is within protection of federal civil rights conspiracy statute and relied on *Haddle v. Garrison*, 525 U.S. 121, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998)); *See also, Gilmartin v. City of Tucson*, 2006 WL 5917165, 3 (D.Ariz. 2006) ("In reviewing the analysis and reasoning set forth in *Brever*, *Heffernan, Chavis* and *Kinney*, this Court is persuaded that the majority rule on the issue of witness standing under 42 U.S.C. § 1985 is the appropriate and reasoned conclusion.")

specific actions defendants took in publishing the attacks pursuant to the conspiracy and in furtherance of it, quote the specific words used in furtherance of the conspiracy, in all their nastiness, about Molly Kronberg's supposed perjury that, defendants trumpeted, had caused her husband to die and had caused LaRouche, and other supposedly "framed" people to be unfairly sent to prison because she was a criminal perjurer and, perhaps most telling in terms of defendants motive for combining to injure Molly Kronberg by their invective against her, the allegations set forth the anger expressed by LaRouche at Molly by reason of her having testified, which testimony was plainly the motivation for their actions. All this is quite enough to state a conspiracy claim and certainly not "conclusory." Def. Mem. 8.

The specificity of Plaintifff Kronberg's allegations therefore is precisely what was missing in the case cited by defendants at Def. Mem. 9. We address the distinguishing shortcomings of each. In *Iqbal, supra*, 129 S.Ct. 1937, (cited at Def. Mem. 5, 11), plaintiff alleged that his temporary detention after the terrorist attack of 9/11 was a "purposeful and unlawful discrimination" against an Arab Muslim. In this context the allegations that petitioner [Attorney General] Ashcroft was the "principal architect" of the "invidious" plan and that petitioner [FBI Director] Mueller was "instrumental" in executing the plan were bare assertions which, without more allegations, were, not entitled to be assumed true even on a 12(b)(6) motion. *Id.* at 1951-1952.[5] Our pleading has the very specifics missing in *Iqbal*.

---

[5]    Despite the implausibility inherent in *Iqbal,* and its bare allegation that high officials had targeted him, The Supreme Court remanded to the Second Circuit to decide whether to remand to the Eastern District of New York so that respondent could seek leave to amend his complaint. Kronberg's Complaint here is more than adequate. But certainly, the Amended Complaint raises sufficient allegations to allow for leave to replead should this Court determine that any allegation is insufficient. However, the Complaint as it now reads is certainly specific and without doubt puts the defendants on notice the claims they must defend. It does so literally down to the punctuation in the hateful and injurious articles Kronberg alleges that they combined to injure her by writing and publishing. Under Rule 8, a complaint must allege facts with sufficient specificity to inform defendants what they are accused of so that they can answer or respond to the allegations. *See* Fed.R.Civ.P. 8; *see also, e.g., Chao v. Rivendell Woods, Inc.,*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965 (2007)(cited

at Def. Mem. 5), the Supreme Court dismissed plaintiffs' class action alleging an antitrust

conspiracy by incumbent telecommunications providers because plaintiffs' allegation that the

providers' "parallel business conduct" was evidence that they had agreed not to compete and to

forestall competitive entry was not enough under existing law and not "plausible" as conspiracy

evidence because such conduct was fully explained by each provider's natural, economic self-

interest in maintaining its own regional dominance. 550 U.S. at 566.    Our Complaint pleads no

such implausibility. It links defendants words to the harm Kronberg alleges, shows that the

actions were motivated by her testimony and shows the precise words used and how they

themselves show the collective motive of defendants to attack her by reason of that testimony.

In *Lewin v. Cooke*, 95 F.Supp.2d 513, 517 (E.D.Va. 2000), (cited at Def. Mem. 9), the

plaintiff's civil rights claims were dismissed after filing six lawsuits against his medical college

and its officials based on their refusal to provide information to him related to a failed exam.

The Court found that the plaintiff failed to allege specific evidence of a retaliatory conspiracy

against him, particularly because the plaintiff made the "untenable" claim that the school's

conduct was retaliation for his unfavorable deposition testimony when the school refused to

provide the documents he requested prior to the occurrence of the deposition. *Id.* at 526. This is

not germane.

In *Simmons v. Poe*, 47 F.3d 1370 (4th Cir. 1995), (Def. Mem 9), the Fourth Circuit,

reviewing a summary judgment motion, *not* a 12(b)(6) motion, found that no evidence supported

the plaintiff's claim that two police officers conspired to use a racist profile to search, seize and

arrest plaintiff, an African-American male, during a rape investigation. There was no evidence

---

415 F.3d 342, 347-48 (4th Cir.2005) (a complaint must "sufficiently allege[ ] each element of the cause of action so as to inform the opposing party of the claim and its general basis").

that either defendant endorsed or encouraged each other's action, or otherwise demonstrated a "meeting of the minds" to explicitly or implicitly conspire against the plaintiff. *Id.* at 1377-78. Molly Kronberg will obviously have to show facts from which a reasonable jury can infer a conspiracy, but not at the pleading stage. She has adequately alleged that they did conspire.

In *Davis v. Hudgins*, 896 F.Supp. 561 (E.D.Va. 1995), (Def. Mem. 9), plaintiff's 1985 claims were dismissed because he failed to demonstrate any specific acts of discrimination and made only broad allegations that defendants conspired to violate his constitutional rights. Kronberg's Complaint is laced with the very types of specifics that plaintiff failed to bring in *Davis*. In *Sanford v. Commonwealth*, 2009 WL 2573179 (E.D.V.A.), (Def. Mem. 9), plaintiff brought an action against several defendants, including a nurse, for violation of the rights of his disabled brother who became delirious after a major surgery and was then roughly handled by police and guards, given toxically-high doses of sedative, was hand-cuffed, left prone on the floor, and died. Thereafter hospital personnel prevented the family from examining the body and lied about the incident. The Court dismissed the conspiracy claim against the defendant-nurse because there she had no plausible authority over the officers' conduct, had no duty to prevent their actions, and though she called the police to assist with the patient, that alone was insufficient to make her a participant by agreement or conduct to evidence "a mutual understanding to try to accomplish a common and unlawful plan." *Id.* at *2-3. The legal analysis used by the court to dismiss the nurse is simply not applicable to the Kronberg Complaint.

*Brissett v. Paul*, 1998 WL 195945, 2 (4th Cir.1998) (cited at Def. Mem. 11) (Black police officer's 1985 and 1986 claims that other officers conspired to deprive him of his constitutional rights were dismissed where his conclusory allegations lacked a factual basis to show the white officer discriminated in his arrest since there was probable cause given the facts alleged); *Bardes*

*v. Magera*, 2009 WL 3163547, 28 (D.S.C. 2009)(cited at Def. Mem. 11) (Plaintiff's conspiracy

claim against social services attorney dismissed because only bald allegations were made which

failed to plead operative facts, stating only that the attorney conspired with other defendants to

violate his constitutional rights.); *McHam v. North Carolina* Mut. Life Ins. Co., 2007 WL

1695914, 4 (M.D.N.C. 2007) (cited at Def. Mem. 11) (Plaintiff's 1985 conspiracy claim

dismissed because he made conclusory assertions that the defendants conspired to delay the

filing of this lawsuit by having him falsely arrested because the wife of one of the individual

defendants is a Winston-Salem police officer and therefore the individual defendants conspired

with the police department to have him arrested without pleading any facts indicating any

agreement among the defendants to have him arrested, much less for the purpose of delaying the

filing of his complaint.) None of these cases can be used to erode the allegations of Molly

Kronberg.

We surely agree that ". . . a plaintiff [is required] to allege some details of time and place

and the alleged effect of the conspiracy." *Firestone v. Wiley*, 485 F.Supp.2d 694, 704 (E.D.Va.

2007)(Virginia civil conspiracy claim)(Def. Mem. 9) Kronberg has done so. Moreover,

> Asking for plausible grounds to infer an agreement does not impose a probability
> requirement at the pleading stage; it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of illegal agreement...And, of course, a
> well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of
> those facts is improbable, and "that a recovery is very remote and unlikely."

*Twombly, supra,* 550 U.S. 544, 556, 127 S.Ct. 1955, 1965 (2007). We respectfully submit that

while this bar is quite low, Molly Kronberg's complaint is a far cry from it, and provides an

ample basis to plead that these defendants—LaRouche, a dedicated supporter of LaRouche's, an

independent PAC organized to promote his philosophy, and a magazine which espouses his

views in many of its pages—were acting in concert, as we have specifically alleged.

11

"[T]he plaintiff must first allege that the defendants combined together to effect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." [citation omitted] …[p]laintiff must at least plead the requisite concert of action and unity of purpose in more than "mere conclusory language." *Lewis v. Gupta*, 54 F.Supp.2d 611, 618 (E.D.Va.1999) (citing *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985) (a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly and justly drawn from the facts alleged)).

*Bay Tobacco, LLC v. Bell Quality Tobacco Products*, LLC, 261 F.Supp.2d 483, 499 (E.D.Va. 2003)(cited at Def. Mem. 20 and found a state civil conspiracy claim failed because plaintiff alleged that defendants conspired to form an agreement to produce for another company which is a lawful act, rather than an unlawful purpose.)

Kronberg has sufficiently pleaded facts evidencing a conspiracy to move her claim "across the line from conceivable to plausible," survive a motion to dismiss, and continue to the discovery phase here. *See, Twombly, supra*, 550 U.S. at 570.

## C.    The Intra-corporate Immunity Doctrine Does Not Bar Kronberg's Claims

### 1. Introduction

The Intracorporate Immunity Doctrine provides that a corporation cannot conspire with itself. Therefore, a conspiracy cannot exist between a corporation and its directors, officers and employee, nor can they conspire with each other if the object of the conspiracy is corporate related. *ePlus Technology v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002)* ("[A] cts of corporate agents are acts of the corporation itself, and corporate employees cannot conspire with each other or with the corporation."). See also, *Phoenix Renovation Corp. v. Rodriguez*, 258 Fed.Appx. 526, 539, 2007 WL 4443328, 11 (4th Cir. 2007). The Fourth Circuit has applied the doctrine in §1985 cases recognizing two exceptions: (1) "An exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective." *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). And (2) unauthorized

acts [of an employee] in furtherance of a conspiracy may state a claim under §1983(3). Thus, while unauthorized acts of the official would constitute corporate action, (and hence avoid a conspiracy charge), unauthorized acts would not." *Buschi v. Kirven*, 775 F2d 1240, 1252-53 (4th Cir. 1985) (citing *Hodgin v. Jefferson*, 447 F.Supp. 804, 807 (D.Md. 1978)).

We contend that the doctrine has no place here since there is no showing that all four defendants possess such a unity of corporate interest that they are legally incapable of conspiring with each other. Defendant Lyndon LaRouche has no qualifying legal connection with defendant LaRouchePAC, Barbara Boyd has no such relationship with defendant EIR, and, of course, Barbara Boyd and Lyndon LaRouche are separate individuals. The two corporations likewise are not functionally joined. Thus the defendants are fully capable of being charged with conspiring with each other.

### 2. The Pleading Stage Is Too Soon In Any Event

The raising of the doctrine at this point in the proceedings is inappropriate as the doctrine is an affirmative defense to which, *even if* established by facts, the plaintiff may refute by fact-based exceptions.   A Rule 12(b)(6) Motion is determined upon facts as alleged in the plaintiff's complaint.  The facts as pleaded simply do not support the application of the doctrine.

On the merits, the doctrine is inapplicable.

### 3. No Unity of Interest Between Corporate Defendants LPAC and EIR

It is important to note that the defendants themselves admit that LPAC and EIR News Services, Inc. are separate legal entities.  Defendants argue in the supporting Memorandum that: "Moreover, the Fourth Circuit takes a "functional approach" to the question of intracorporate immunity and has held that *two legally separate entities, such as LaRouche PAC and EIR, cannot conspire if they share a "similar unity of interest."* (Def. Mem, page 14) (emphasis

13

added.)  We quite agree that they are separate legal entities. But there has been no showing that they have a "similar unity of interest."

In the two cases the defendants cite - and in all cases the plaintiff could find - in which the unity of interest analysis was applied to establish actions by two entities were deemed the action of one and thus defeat a claim for conspiracy, the court found a *legal relationship* between the entities was the basis for unifying the legally separate entities.  Indeed, if only a shared interest in purpose was necessary to show a "unity of interest," then the exception would swallow the whole as by definition, co-conspirators share in the purpose of the conspiracy.  This review of civil rights cases also shows that while the Intracorporate Immunity Doctrine and its exceptions have been applied in civil rights cases, the functional unity of interest approach has not.  It remains solely a §1 Sherman Act antitrust concept. *See Copperwald Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed 2d, 628 (1984).[6, 7] In any event, its existence has not been established by the pleadings.

Nevertheless, defendants seek to apply the concept in this matter and support their argument with two §1 Sherman Act cases.  First cited is *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp. 1169 (E.D.Va. 1995).  In *Williams* the court found that the one defendant was the legal successor in interest to the co-defendant who no longer existed when the property

---

[6]     In this case, Copperweld and one its wholly owned but separately incorporated subsidiaries were being sued for §1 Sherman Act violations.  The court found that though Copperweld and its subsidiary were independent legal actors, they were one unified economic actor for § 1 Sherman Act purposes and being one, not capable of entering into a conspiracy.  The joining of these two distinct legal entities into one antitrust actor was based in part upon the availability to the federal government of other tools under § 7 of the Clayton Act, § 5 of the Federal Trade Commission Act and § 2 of the Sherman Act and are not available in civil rights cases. *Cooperweld*, 467 U.S. at p. 777.

[7]     The two cases cited by the defendants in their Footnote #9, *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985) and *Lewin v. Cooke*, 95 F. Supp. 2d 513 (E.D. Va. 2000) are traditional principal-agency cases and not unity of interest cases.

entity converted itself from a Co-op Corporation to a Condominium Association. Both entities were comprised of the same property, membership and Board of Directors. No such facts can be shown in this case, particularly at the pleading stage.

Next in *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 673 (4th Cir. 1991) ("*Oksanen II.*"), the plaintiff sued the defendant hospital with violating §1 of the Sherman Act by conspiring with its independent, subcontracted medical staff for the way in which peer review disciplinary actions were taken. The court found in the peer review context that the medical staff comprising the peer review panel were not employees or officers of the hospital but that the panel was specifically acting in the capacity as an agent of the hospital and the panel's entire authority consisted of reviewing facts and making a recommendation to the hospital board of directors who then solely made the decision Oksanen challenged.

LPAC and EIR are neither successors in interest, principal and agent, nor legally related or tied to one another in any manner. At least, no such facts can be assumed from the pleadings.

The Plaintiff alleges in her Complaint that these corporate co-defendants are founded for different purposes with one entity being a for profit news publishing corporation incorporated in Delaware and the other being a non-profit political fundraising corporation incorporated in Virginia. Amended Complaint ¶9 and ¶6. Nowhere in the Amended Complaint does the Plaintiff allege these corporate co-defendants share ownership, directorship or management. State corporation filings for these two corporations reveal that there is no shared officer, director or ownership among these two entities. *See* state corporation records attached as Exhibit A and acceptable for court's consideration per *Bartlett v. Frederick County, Maryland* cited on page 1 of this Opposition.

The defendants' motion ignores this Circuit's ruling in *Oksanen v. Page Memorial Hosp.*, 912 F.2d 73 (4th Cir. 1990) (*Oksanen I*). In *Oksanen*, the Fourth Circuit, citing *Copperweld*, specifically ruled that despite a joint interest in the success of the hospital exiting between the plaintiffs, the hospital itself and the doctors who provided care to their patients at the hospital were legally independent actors who sometimes worked as agents of the hospital and sometimes worked as independent economic actors. The shared interest in the success of the hospital was not in and of itself sufficient to establish unity of interest for conspiracy purposes. Conspiracy required a fact based analysis of the reality of the actions and not just the form of the entities. Hence, *Copperweld* established this "functional approach" examining "unity of interest" in § 1 Sherman Act cases and the shared general interest in the hospital's success was insufficient to meet the test.

The Fourth Circuit specifically found that it was possible for the hospital and its medical staff to be either independent or unified but that the summary judgment motion ruled on by the court was noting that the district court had stayed discovery and it was premature to grant summary judgment before discovery was allowed to be completed. (*See Oksanen I* at pgs. 76-78 for the court's analysis and citations to numerous supporting cases.) Thus the Fourth Circuit has specifically rejected the generalized shared interest of purpose (i.e. in this case, participation in a political movement) as a basis for applying the unity of interest concept to conspiracy claims, and the defendant's motion is premature as discovery has not even begun, much less been completed. We welcome an inquiry into the supposed interrelations between the two coroporate entities.

16

### 4. Individual Defendants Are Not Agents of Either Corporate Defendant [8]

Plaintiff alleges co-defendant Lyndon LaRouche is the founder of LPAC. Amended Complaint ¶6. "Founder" is an historical relationship and contains no allegation as to the present relationship or the relationship that existed at the time of the alleged wrongful actions.

Plaintiff alleges co-defendant Lyndon LaRouche is a founding editor and contributing editor of EIR. Again, founder is an historical relationship and contains no allegation as to the present relationship or the relationship that existed at the time of the alleged wrongful actions. A contributing editor means many things to many different publications and does not assert whether the relationship is one of agency, independent contractor or beneficial volunteer.

If the defendants wish to establish facts not contained in the Complaint to establish LaRouche is an agent of the kind qualifying to trigger the intracorporate immunity as to him and either corporate defendant named in this case, they certainly have that right to do so and argue their position at a later proceeding. However, the plaintiff also has the right to establish with further facts LaRouche is a separate actor either based upon the personal interest exception (*Greenville Pub. Co. v. Daily Reflector Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)) or that he undertook the offensive actions outside the scope of his agency should such an agency actually be established. *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985)

Indeed in this regard plaintiff does allege LaRouche has an independent personal stake in LPAC and organizations that support him as these entities are fundraising conduits funding LaRouche's lavish lifestyle. His extravagant personal lifestyle has no relationship to the success or failure of these corporate defendants' stated purposes but provides cash flow for the defendant to fraudulently raid. Amended Complaint ¶¶6-7. Discovery will amplify this.

---

[8]   Barbara Boyd is an agent of LPAC, as its treasurer, but as discussed below, she is not being sued in that capacity or for actions taken in that capacity. In any event, she has no role with defendant EIR and thus is freely capable of conspiring with it, as is alleged.

Quite apart from LaRouche, there is defendant Barbara Boyd. She is named as the treasurer of LPAC (Amended Complaint, ¶8) and as treasurer, she is an agent of that entity. However, Boyd is only identified as the LPAC treasurer and is not being sued in or because of that position. Ms Boyd independently published libelous material in an individual capacity as part of the conspiracy but the libel was not published in an LPAC publication nor was it published by Boyd in her capacity as treasurer. Moreover, Barbara Boyd is not alleged to have had any agency relationship with defendant EIR.

## D.    The Applicable Statute of Limitations Is No Bar Here

The statue of limitations for the section 1985 witness-harassment claim is two years. The libel claim has a one year statute of limitations.[9] Thus many of the acts and publications alleged in the Amended Complaint are well with the limitations periods, occurring as they did in 2009 and 2008. Some of the allegations do refer to acts and publications older than the two years next preceding the filing of the Amended Complaint on August 19, 2009. However, this means nothing at the pleading stage for two reasons.

First, complaints charging a conspiracy routinely allege that the conspiracy started beyond the statute of limitation, but also alleges, as Kronberg's complaint, that the conspiracy continues up to and including a period within the statute. Even if some of the early acts are time

---

[9]    The Reconstruction Civil Rights Acts, which include 42 U.S.C. §1985 do not specifically provide a statute of limitations. *McCausland v. Mason County Bd. Of Educ.*, 649 F.2d 278, 279 (4th Cir.1981). However, civil rights violations are considered analogous to personal injury claims for purposes of a statute of limitations, which is governed by the personal injury statute of limitations. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Wilson v. Garcia*, 471 U.S. 261, 269 (1985) (superceded in part by 28 U.S.C. § 1658); *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir.1983). Virginia has a two-year statute of limitations for general, personal injury claims. Va.Code Ann. § 8.01-243(A); *Almond v. Kent*, 459 F.2d 200, 203-04 (4th Cir.1972). Under these principles, a plaintiff bringing a section 1985 action must do so within two years. Under Virginia law, the statute of limitations for a claim of defamation is one year. *See* Va.Code Ann. § 8.01-247.1; *Hatfill v. New York Times Co.* 416 F.3d 320, 334 (4th Cir. 2005)

barred, that does not mean that they cannot be pleaded and proved as part of the proof that the conspiracy was in fact formed. As long as some acts in the conspiracy are alleged to have occurred within the limitation period, the claim survives. Second, the torts alleged may well qualify as continuing torts, thus elongating the applicable statutes to include those allege acts which would otherwise be barred.

To this second point, defendants contend (Def. Mem. P. 15) that Kronberg may not pursue the older acts (occurring in 2007) alleged in her Amended Complaint under a continuing tort violation theory because, defendants contend, the continuing tort therory has never been applied in the 1985 context. For this proposition, they cite only an unpublished case from the Northern District of Illinois.  This is by no means dispositive.

The continuing violation theory has been applied to 1985 actions.  *See, e.g., Smith v. Shorstein*, 217 Fed.Appx. 877, 881, 2007 WL 460831, 4 (11th Cir. 2007)(Court of Appeals vacated district court's dismissal of prisoner's claims under §§1983 and 1985 against corrections officials holding they were not time-barred because plaintiff had alleged a continuing violation.); *Cornwell v. Robinson*, 23 F.3d 694, 703 -704 (2d Cir. 1994)(on appeal of entry of judgment in plaintiff's favor, court found that the original complaint alleging violations of §§1983 and 1985 was timely because the acts of discrimination and harassment by the individual defendants constituted a continuing wrong; reversed on other grounds.)

The Fourth Circuit has recognized generally that in order for the continuing tort doctrine to apply, a plaintiff "must establish that the unconstitutional or illegal act was a fixed and continuing practice." *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166-67 (4th Cir.1991) (quoting *Perez v. Laredo Junior College*, 706 F.2d 731, 733 (5th Cir.1983)).  The challenged action must be repeated within the statute of limitations period. *Id* at 1167. If the

continuing violation doctrine applies, then illegal acts outside of the statutory period may be considered as part of Kronberg's claim. *See, Gilliam v. South Carolina Dept. Of Juvenile Justice*, 474 F.3d 134, 140 -141 (4th Cir. 2007)(in the hostile work environment context, if the doctrine is applied then plaintiff's claim "may appropriately extend ... to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well.")

The continuing violation doctrine is laden with fact questions including a determination on whether there was a continuing practice of illegal acts, when certain actions occurred in relation to the applicable limitation period, *i.e.*, two years next preceding the filing of the Complaint, and which damages accrued or continue to accrue during the applicable limitation period. This fact-based inquiry cannot be the subject of a resolution on pleadings, but is only properly resolved in pre-trial discovery. Kronberg has plainly pleaded many acts committed by defendants within the two year statute of limitations. This is enough for now. *Cf., Adams v. Jones*. 2005 WL 4163671, 2 (E.D.Va. 2005)(Smith, J.)(Defendants filed motion to dismiss plaintiff's §1983 claims and, though claims failed for other reasons, The court first addressed statute of limitations argument holding, "Regardless of the merits of this claim, because plaintiff claims a continuing violation, the court will not dismiss this suit based on the statute of limitations.")

In Kronberg's case, therefore, the Amended Complaint plainly alleges many acts within the limitation period. That period may be elongated to include earlier acts under the continuing tort doctrine. But that is a fact based question which should not be resolved at this time.

**E. The Libel Claim Is Adequately Pleaded**

In arguing that the libel claims are inadequate, defendants (at Def. Mem. 18 – 20) assert

that "some" of the allegations do not in their view amount to libel *per se*, and that others are not

specific enough. As with the statute of limitations question addressed just above, it is not

necessary, at the pleading stage, to parse through every alleged libelous statement, since so many

of the writings pleaded are obviously *and* quite specifically libelous *per se*. For example:

Kronberg set forth the exact defamatory words of defendants that state a claim for libel

*per se* in her Amended Complaint at ¶14-17, including that:

- On April 26, 2009 in a Morning Briefing, LaRouche stated the following about Molly Kronberg:

  " . . . . . . none of us would have gone to prison, not in that trial, not in Alexandria, except for Molly. . . . Molly gave the false testimony without which the trial could not have occurred in Alexandria. . . . .

  When this woman, who's been a government agent, who became a government agent, who sent a bunch of us to prison directly and deliberately . . . She lied! It was only her lies that got us imprisoned. If she hadn't had that lie, nobody would have gone to prison in that trial…"

- In a LaRouchePAC publication publicly posted on the website on February 26, 2009, LaRouche wrote or caused to be written: "in Alexandria, Va. prosecutors obtained perjured testimony from one crucial witness, Marielle Kronberg,"

- In a LaRouchePAC publication publicly posted on the website on March 25, 2009, LaRouche wrote or caused to be written: "one Marielle 'Molly' Kronberg … provided false testimony against LaRouche in the infamous criminal trial . . ."

- The March 6, 2009 issue of *EIR* [defendant *Executive Intelligence Review*] published that the conviction of Lyndon LaRouche "relied exclusively on perjured testimony from one crucial witness, Molly Kronberg, whose false statements under oath were the basis for the illegal conviction of LaRouche on false allegations of tax fraud conspiracy. LaRouche was sentenced to 15 years in Federal prison on the fabricated charges, and colleagues were sentenced to 3-5 years, all on the basis of the fraudulent Kronberg testimony, which centered on her own criminal uttering of a false check."

- In the April 10, 2009 issue of *EIR* [defendant *Executive Intelligence Review*] on pages 36-37 thereof *EIR* stated that Marielle Kronberg presented false testimony and

"without her false testimony, the tax charge against LaRouche could not have been brought."

These exact quotes, specifically dated and sourced to specific publications are plainly libel *per se*. *See, Hatfill v. New York Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005)(*per se* libels "impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished..."); *Schnupp v. Smith*, 249 Va. 353, 360, 457 S.E.2d 42, 46 (Va. 1995) (Words that impute the commission of a crime which is "punishable by imprisonment in a state or federal institution" are actionable *per se*.)

While obvious, we cite 18 U.S.C. §1623 (1988), criminalizing perjury and punishing its commission with up to five years imprisonment.

Ignoring the above, Defendants parse parts of six *other* paragraphs in the Amended Complaint that they believe fail to show libel *per se*. While we submit that this issue need not be parsed at the pleading stage given the number of statements quoted in the Complaint which are libelous *per se*, defendants' argument here would not be helpful to their position even if we had to parse the issue now:

> It is not always clear whether particular words actually charge a person with a crime of moral turpitude or unfitness for employment or the like, but the general rule of interpretation is that "allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *** A defamatory charge may be made expressly or by "inference, implication or insinuation." *** In short, "it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory." *** Accordingly, we have stated that courts applying Virginia defamation law should consider not only the words themselves but also the "inferences fairly attributable" to them. [citations omitted]

*Hatfill, supra*, 416 F.3d at 331. In determining whether the statements complained of here defame Kronberg, every fair inference that may be drawn from the pleadings must be resolved in her favor. *Chapin v. Greve*, 787 F.Supp. 557, 562-563 (E.D.Va. 1992) (Ellis, J.)

Defendants claim that ¶14(ii), referring to an email sent by LaRouche that asserted Kronberg's husband killed himself because of her contributions to George Bush in the 2004 Presidential election is not defamatory on its face. (Def. Mem. 19)  We submit that publicly accusing Kronberg of causing her beloved husband to take his own life because of her political beliefs is not merely embarrassing or unflattering, but an attack on Kronberg's good name and character.[10] *See Chapin, supra*, 787 F.Supp. at 562 ("To defame a person is to attack his or her good name, thereby injuring his or her reputation....To be defamatory as a matter of law, a statement must be "more than merely unpleasant or offensive;" it must "make the plaintiff appear odious, infamous, or ridiculous.")  The day following this email, LaRouche published further statements on this subject reiterating that Ken Kronberg committed suicide because Molly Kronberg contributed to the Bush Campaign while Ken and the LaRouche movement were "engaged in an all-out war to prevent the re-election of Bush-Cheney and the clearly manifested fascism which they represent…"  Defendants challenge that these statements do not constitute libel *per se*. (Def. Mem. 19).  However, even if not libel *per se*, this allegation should not be dismissed but held to the appropriate defamation standard because it is defamatory on its face. *See, Chapin, supra*, 787 F.Supp. at 562; *see also Kunz v. People of State of New York*, 340 U.S. 290, 299, 71 S.Ct. 312, 317 (U.S. 1951), Jackson J. *dissenting opinion* ("damned Fascist" is

---

[10]    Another similar writing (quoted at Amended Complaint ¶14(v)), states:

> *She lied! It was only her lies that got us imprisoned.* If she hadn't had that lie, nobody would have gone to prison in that trial. *Now, you've got a situation, where he [Ken Kronberg, Molly Kronberg's husband] kills himself, because he was living with that witch*: . . . She's never been honest. And then, he commits suicide, and these bums try to blame me for it! *He was driven – there was no reason for the suicide, there was no excuse for it. But there's an understanding of the oppression that he felt by being married to that bitch.* . . . . The "Molly" referred to above was Molly Kronberg.

23

included in "the recognized words of art in the profession of defamation. They are not the kind of insult that men bandy and laugh off when the spirits are high and the flagons are low.")

Defendants claim that Kronberg's allegation at ¶14(iv) that LaRouche stated that Kronberg was a fraudulent witness in the federal case against him fails to allege libel *per se*, *i.e.*, a false accusation of the commission of a crime, because "'fraudulent witness' may be construed as a witness who was obtained by fraud, not a witness who committed a crime." (Def. Mem. 20) Defendants' argument fails because identifying all the possible definitions of a word is not proper grounds to dismiss an allegation at the pleading stage. *See, Chapin, supra*, 787 F.Supp. at 562-563 (When deciding a 12(b)(6) motion, "in determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor.") And when a jury considers this statement in context with the other statements, it is obvious that it cannot be given the benign construction defendants stretch to give it, namely, that Molly was duped into perjuring herself. This applies with equal force to the allegations at ¶14(vii) and ¶15. Fair inferences must be drawn in Kronberg's favor when examining whether defendants' statements are defamatory despite defendants' arguments for different interpretations of the words, such as their quite wishful and unsupported argument that the word "crime" may be "interpreted in a variety of fashions" which may not be defamatory (Def. Mem. 20) and that a "frame-up" may be interpreted in various ways other than meaning a crime. (Def. Mem. 20-21). *See, Chapin, supra*, 787 F.Supp. at 562-563; see also *Hyland v. Raytheon Technical Services Co.*, 277 Va. 40, 46-48, 670 S.E.2d 746, 750-751 (Va. 2009)( "a court must consider the statement as a whole.") The plain meaning of defendants' statements, read in their entirety, is the accusation that Molly Kronberg committed the crime of perjury to incriminate LaRouche.

The allegations in Kronberg's complaint should not be dismissed, but rather held to the proper defamation standard whether it is defamation *per se* or defamation. "[A] defamation complaint must only provide a 'short and plain' statement of the claim that is sufficient to give the defendant fair notice of the nature of the claim and the grounds upon which it rests." *Southprint, Inc. v. H3, Inc.*, 208 Fed. Appx. 249, 254 n2 (4th Cir.2006)(*citing Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir.2005); Fed.R.Civ.P. 8(a)(2)). Kronberg's complaint has met this standard.

**F.    Emotional Distress Damages Were Properly Pleaded**

Kronberg did not make, as defendants contend (Def. Mem 22) a "backdoor attempt" to plead an independent claim of the tort of intentional infliction of emotional distress. Rather she properly pleaded emotional distress as an allowable damage item which she alleged to have been caused by defendants tortious conduct, which she specifically pleaded, i.e., her witness harassment and libel claims. So however disfavored a stand-alone claim for emotional distress damages may be, that is beside the point. What counts is whether, if plaintiff pleads intentional torts, she can include emotional distress as an aspect of the damages she has suffered. The law clearly says she can, and she properly did.

If a plaintiff has a cause of action for an intentional tort, other than the stand-alone tort of the intentional infliction of emotional distress, such as Kronberg's claims here, damages may be recovered for emotional or mental suffering resulting from that tort even though no physical injury has occurred. *See, Sea-Land Service, Inc. v. O'Neal*, 224 Va. 343, 354, 297 S.E.2d 647, 653 (Va. 1982)(in cases of intentional torts "we have approved the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, *where a cause of action existed independently of such harm*.") citing several

25

examples including the libel case *James v. Powell*, 154 Va. 96, 117, 152 S.E. 539, 547 (1930);

*see also, Tripp v. Executive Office of the President*, 200 F.R.D. 140, 149-151 (D.D.C.

2001)(Court denied defendants' motion to dismiss plaintiff's claim under § 1985(2) where

plaintiff argued that she suffered from harassment and "loss of professional reputation" which

may be redressed under §1985(2).) There is no reason why emotional stress damages cannot be

recovered for the 1985(2) tort as is allowable for other intentional torts.

Moreover, the matter of emotional distress as a proper component of damages is quite

settled in libel *per se* cases, as this Court has recognized. *Cretella v. Kuzminski*, 640 F.Supp.2d

741, 756 -757 (E.D.Va. 2009) (Dohnal, M.J.). In *Cretell*a, where a jury entered a verdict in the

plaintiff-lawyer's favor for his claims that the defendant defamed him on several occasions in a

series of web postings, the court cited settled Commonwealth law allowing recovery of

emotional distress damages:

> As expounded by the Virginia Supreme Court, the law of defamation historically protects
> an individual's basic right to "personal security in their uninterrupted entitlement to
> enjoyment of their reputation," and as such, " '[s]ociety has a pervasive and strong
> interest in preventing and redressing attacks upon reputation.' " *(citations omitted)*As to
> defamation *per se,* the analysis is extended one step further whereby the false statements
> necessarily "prejudice [a] person in his or her profession or trade." *(citation omitted)* "The
> critical distinction between defamation *per se* and other actions for defamation is that a
> person so defamed is presumed to have suffered general damages, and any absence of
> actual injury is considered only in diminution of damages." *Stamathis, 389 F.3d at 440.*
> In addition to the presumed damages caused by such statements, *a plaintiff may recover,*
> *not only for the economic or out-of-pocket damages involved, but also for resulting*
> *emotional harm, embarrassment and mental suffering.*

(Emphasis added)  And:

> As discussed extensively in regard to the other claims, actual damages do exist for the
> embarrassment, humiliation and anxiety caused by this statement--particularly harm for
> the anxiety that such statements might be accessed by friends, colleagues, or potential
> employers.

*Id*. at 773.

Courts frequently affirm emotional distress awards in defamation cases. *See, e.g.,* *Stamathis v. Flying J, Inc.,* 389 F.3d 429, 439 (4th Cir.2004) (upholding an award of $240,000 for "insult, pain, and mental suffering" for claims of defamation and malicious prosecution based on false accusation of a crime); *Simon v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304, 1319-20 (11th Cir.1990) (upholding an award of $250,000, given that the slander caused "an impairment of [the plaintiff's] reputation, personal humiliation, and mental anguish and suffering"). Kronberg properly pled emotional and mental suffering, damages which resulted from defendants' intentional torts. *See, Hatfill, supra,* 416 F.3d at 337 (Court of Appeals reversed district court's order granting dismissal finding that plaintiffs merely need to give the defendants fair notice of the claim and the grounds upon which it rests.); *see also White v. Ocean Duchess Inc.,* 2007 WL 4874709, 5 (E.D.Va. 2007)(Miller, M.J.) ("In federal court, plaintiffs do not have to plead emotional distress with the particularity required in Virginia Courts.")

## CONCLUSION

The motion to dismiss should be denied. The pleading is more than sufficient to its task, namely providing adequate notice of the claims. It states claims for which relief can be granted if the facts alleged are proved. While we think it wholly unnecessary, we would be willing to amend if need be but respectfully urge that this is not necessary and the case should proceed to discovery.

Respectfully submitted,
Marielle Kronberg
By Counsel

LAW OFFICE OF JOHN BOND, PLLC
/s/ John Bond
John Bond, Esq., VSB#39457
10617 Jones Street, Suite 101
Fairfax, Virginia 22030
Attorney for Plaintiff Marielle Kronberg

Tel: (703) 359-7116
Fax: (703) 359-7120
jbond@jbondlaw.com

*Of Counsel*
John J.E. Markham, II
Markham & Read
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617)742-8604
jmarkham@markhamread.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

Edward B. MacMahon, Jr. (VSB # 25432)
Law Office of Edward B. MacMahon, Jr.
107 East Washington Street
P. O. Box 25
Middleburg, Virginia 20118
(540) 687-3902
(540) 687-6366 (facsimile)
ebmjr@verizon.net
*Counsel for Lyndon LaRouche and*
*EIR News Services, Inc.*

Bernard J. DiMuro, Esq. (VSB # 18784)
Hillary J. Collyer, Esq. (VSB #50952)
DiMuroGinsberg, P.C.
908 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 684-4333
Fax: (703) 548-3181
Email: bdimuro@dimuro.com;
hcollyer@dimuro.com

*Counsel for Defendants Barbara Boyd and Lyndon*
*LaRouche Political Action Committee, Inc.*

_____

John Bond

**Commonwealth of Virginia**

**EXHIBIT A**
**Page 1 of 4**



**State Corporation Commission**

Enter

Signoff

Help

Print

```
WEB#279                      CIS                          11/09/09
TCP00801    CISM0180    CORPORATE DATA INQUIRY            22:01:52

   CORP ID:  F051894 - 6   STATUS: 00  ACTIVE       STATUS DATE: 02/21/06

   CORP NAME:  EIR NEWS SERVICE INC.

DATE OF CERTIFICATE:  10/08/2004 PERIOD OF DURATION:       INDUSTRY CODE: 00
STATE OF INCORPORATION: DE DELAWARE        STOCK INDICATOR: S STOCK
MERGER IND:                       CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: Y               MONITOR INDICATOR:
CHARTER FEE:          MON NO:              MON STATUS:   MONITOR DTE:
   R/A NAME:  SUSAN ULANOWSKY

      STREET:  60 SYCOLIN RD SE                    AR RTN MAIL:

      CITY:  LEESBURG           STATE : VA  ZIP:  20175
R/A STATUS:  2  OTHER OFFICER   EFF. DATE: 06/26/97  LOC.: 153
ACCEPTED AR#: 209 82 0875   DATE: 10/28/09          LOUDOUN COUNTY
 CURRENT AR#: 209 82 0875   DATE: 10/28/09 STATUS: A  ASSESSMENT INDICATOR: 0
YEAR    FEES    PENALTY    INTEREST    TAXES    BALANCE    TOTAL SHARES
 09    370.00                                                   50,000
COMMAND: ..................................................................
```

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to <u>Function Key Documentation.</u>

1 of 1

11/9/2009 10:03 PM

**Commonwealth of Virginia**



**State Corporation Commission**

EXHIBIT A
Page 2 of 4

| Enter |
| Signoff |
| Help |
| Print |

```
WEB#279                    CIS                        11/09/09
TCP00801   CISM1001   OFFICERS/DIRECTORS AND PRINCIPAL OFFICE   21:58:38

CORPORATE ID:    F051894 6          CURRENT AR# 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 DATE 10/28/09

   CORP NAME:    EIR NEWS SERVICE INC.

      STREET:  60 SYCOLIN RD SE

        CITY:  LEESBURG          STATE:  VA  ZIP:  20175
                                      DIR REQUIRED: Y
S  C                OFFICERS/DIRECTORS DISPLAY FOR AR#  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
E  A
L  T          NAME                        TITLE        SIGN
   O   GERALD ROSE                     PRESIDENT
   O   SUSAN ULANOWSKY                 SECRETARY
   D   MARJORIE MAZEL HECHT            DIRECTOR
   D   LYNDON H LAROUCHE JR            DIRECTOR
   D   NANCY B SPANNAUS               DIRECTOR




      COMMAND:   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
```

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

**Commonwealth of Virginia**



**State Corporation Commission**

EXHIBIT A
Page 3 of 4

Enter

Signoff

Help

Print

```
WEB#279                        CIS                      11/09/09
TCP00801   CISM0180        CORPORATE DATA INQUIRY       21:55:02

  CORP ID:   0622958 - 7  STATUS: 00  ACTIVE        STATUS DATE: 08/30/04
  CORP NAME:  Lyndon LaRouche Political Action Committee, The

DATE OF CERTIFICATE: 08/30/2004 PERIOD OF DURATION:     INDUSTRY CODE: 00
STATE OF INCORPORATION: VA VIRGINIA      STOCK INDICATOR: N NON-STOCK
MERGER IND:                      CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: Y             MONITOR INDICATOR:
CHARTER FEE:  50.00     MON NO:           MON STATUS:   MONITOR DTE:
   R/A NAME:  BARBARA M BOYD

   STREET:  40 SYCOLIN RD

   CITY:  LEESBURG              STATE : VA  ZIP: 20175
R/A STATUS:  1  DIRECTOR     EFF. DATE:  08/30/04  LOC.: 153
ACCEPTED AR#: 209 52 0769  DATE: 06/29/09          LOUDOUN COUNTY
 CURRENT AR#: 209 52 0769  DATE: 06/29/09  STATUS: A  ASSESSMENT INDICATOR: 0
YEAR    FEES    PENALTY   INTEREST   TAXES   BALANCE      TOTAL SHARES
 09     25.00

COMMAND: .............................................................
```

**NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.**



**Commonwealth of Virginia**

**State Corporation Commission**

EXHIBIT A
Page 4 of 4

```
WEB#279                           CIS                         11/09/09
TCP00801    CISM1001    OFFICERS/DIRECTORS AND PRINCIPAL OFFICE   21:57:03

   CORPORATE ID:    0622958  7        CURRENT AR# 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 DATE 06/29/09
   CORP NAME:   Lyndon LaRouche Political Action Committee, The

      STREET:  40 SYCOLIN ROAD

      CITY:  LEESBURG          STATE:  VA  ZIP:  20175
                                         DIR REQUIRED: Y
S  C            OFFICERS/DIRECTORS DISPLAY FOR AR#  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
E  A               NAME                    TITLE        SIGN
L  T
   B   BARBARA BOYD                    TREASURER
   D   RICHARD S MAGRAW                DIRECTOR




COMMAND: ...........................................................
```

Enter

Signoff

Help

Print

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to <u>Function Key Documentation.</u>