IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARIELLE ("MOLLY") KRONBERG, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LYNDON LAROUCHE, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | No. 1:09cv947 (AJT/TRJ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. No. 20). For the reasons stated below, the motion is denied.

### I. BACKGROUND

On August 21, 2009, plaintiff Marielle "Molly" Kronberg ("Plaintiff" or "Kronberg") filed a complaint, which she later amended on September 2, 2009 (the "Complaint"), against Lyndon LaRouche ("LaRouche"), Barbara Boyd ("Boyd"), EIR News Service, Inc. ("EIR"), and the Lyndon LaRouche Political Action Committee ("LaRouche PAC"), (LaRouche, Boyd, EIR, and LaRouche PAC collectively, "Defendants"). In her Complaint, Kronberg alleges two counts: (1) Conspiracy to Injure a Witness under 42 U.S.C. § 1985 and (2) Libel *Per Se*.

On October 26, 2009, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Kronberg has opposed that motion and on Friday January 8, 2010, this Court held a hearing, following which the Court took the motion under advisement.

## II. FACTS

The Complaint alleges the following facts, which are assumed to be true for the purposes of the motion to dismiss.

Defendant LaRouche, a resident of Round Hill, Virginia, "is the head of what he calls a political movement." Compl. at ¶ 6. Years ago, LaRouche organized, under federal law, the LaRouche PAC, a Political Action Committee that generates income "to support his lavish lifestyle." *Id.* at ¶¶ 6-7. LaRouche PAC's principal place of business is in Leesburg Virginia. As of July 30, 2004, Boyd was listed on the LaRouche PAC's Statement of Organization, filed with the Federal Election Commission, as the Treasurer of that organization. Boyd, who resides in Leesburg, Virginia, "is a longtime, devoted follower of [LaRouche], works with him on a weekly basis, and sometimes daily, assists in his writings, and is active in [the LaRouche PAC]." *Id.* at ¶ 8. EIR is a news publishing corporation incorporated in Delaware and registered in good standing in Virginia. EIR produces *Executive Intelligence Review* magazine, a LaRouche publication. LaRouche, a founding editor of the *Executive Intelligence Review*, is a contributing editor.

Kronberg, a resident of Leesburg, Virginia, was "[f]or many years . . . a member of the National Caucus of Labor Committees (the "NCLC"), . . . an association of individuals who supported [LaRouche]." Compl. at ¶ 5. In 1988, Kronberg was compelled under subpoena to testify as one of more than twenty prosecution witnesses at a trial against LaRouche, among others, for mail fraud and conspiracy to defraud the United States by scheming to conceal his income to avoid paying income taxes. After the trial, LaRouche was convicted of committing fraud against elderly citizens who had

loaned money to "the LaRouche organization" under false pretenses and of conspiring to defraud the United States for tax evasion. *Id.* at ¶ 13. LaRouche was imprisoned for five years and was released in 1994, following which he "resumed his activities, . . . heading a group of followers." *Id.* at ¶ 13.

"Commencing in or around 2006," Defendants and others not named "commenced a campaign" to criticize the printing company used for all LaRouche-related publications. Compl. at ¶ 14. The printing company, PMR, was run by Ken Kronberg, the Plaintiff's husband. On April 10 and 11, 2007, the "campaign" culminated in two writings in which LaRouche "told those running PMR that they should consider suicide because of their failings." *Id.* at ¶ 14(i). The organization's "Morning Briefing" communication (disseminated by the LaRouche organization via the "intranet"[1]) of April 11, 2010 reported "LaRouche's importunings of suicide." *Id.* On April 11, 2007, Ken Kronberg committed suicide.

The Complaint further alleges that following Ken Kronberg's suicide, LaRouche made the following statements relating to Kronberg's role in her husband's suicide.

a) **August 18, 2007**: LaRouche wrote an email to an unspecified number of members of the LaRouche organization entitled "Bush-League Molly," in which he stated that the reason Ken Kronberg committed suicide was that he had felt betrayed because Molly Kronberg had given financial support to President George Bush in the 2004 presidential election (Compl. at ¶ 14(ii));

b) **August 19, 2007**: LaRouche wrote in the Morning Briefing, published to LaRouche followers and others, that Molly Kronberg had contributed to the Bush campaign and that, "[a]t the time of these contributions, Ken Kronberg . . . was engaged in an all-out war to prevent the re-election of Bush . . .. Does anything more need to be said in the matter of Ken's suicide?" (Compl. at ¶ 14(iii)).

---

[1] The "intranet" referred to in the Complaint is not described. Accordingly, it is unclear whether the LaRouche organizations maintain their own internal intranet site, accessible only to members, or whether the Complaint intended to refer to the Internet, which is accessible to the public generally.

The Complaint also alleges that the following statements were made about Kronberg, and her role as a witness at the 1988 trial against LaRouche:

a) **August 14, 2008**: in a daily briefing "caused to be written and published by LaRouche," published to LaRouche followers and placed on the public Internet, LaRouche was quoted as saying that in the case in which he was convicted, Kronberg was a fraudulent witness and her husband Ken "had committed suicide because his wife was on the other side, and he [Ken] thought the situation was hopeless." (Compl. at ¶ 14(iv));

b) **February 20, 2009**: LaRouche and Boyd composed and wrote an article/press release in a LaRouche PAC publication publicly posted on its website entitled "The Crimes of Marielle (Molly) Kronberg Defeats LaRouche's HBPA in South Dakota," in which Kronberg is accused of committing perjury during her testimony at the 1988 trial (Compl. at ¶ 14(vii));

c) **February 26, 2009**: LaRouche wrote or caused to be written an article/press release in a LaRouche PAC publication publicly posted on its website, which stated that "Va. Prosecutors obtained perjured testimony from one crucial witness, Marielle Kronberg," and accused Kronberg of criminal uttering of false checks and giving false testimony (Compl. at ¶ 14(viii));

d) **February 27, 2009**: EIR published an editorial called "Reversing a Crime" which stated in part: "In 1979 and 1980, [Kronberg] participated in a concocted scheme to arbitrarily impute income to LaRouche for purposes of appearances during LaRouche's 1980 presidential campaign" and further stated that Kronberg provided false testimony leading to LaRouche's tax fraud conviction. The article also stated that Kronberg had committed the crime of uttering by writing out royalty checks from LaRouche's publisher to LaRouche and that the FBI blackmailed her using that crime so that she would give false testimony against LaRouche, referring to the testimony as a "frame-up of Lyndon LaRouche." (Compl. at ¶ 15);

e) **March 6, 2009**: EIR published an article on page 79 which stated, in part, that LaRouche's 1988 conviction "relied exclusively on perjured testimony from one crucial witness, Molly Kronberg, whose false statements under oath were the basis for the illegal conviction of LaRouche. . . . LaRouche was sentenced . . . all on the basis of the fraudulent Kronberg testimony, which centered on her own criminal uttering of a false check." (Compl. at ¶ 16);

f) **March 17, 2009**: in a Morning Briefing published to LaRouche followers and placed on the public Internet, LaRouche is reported to have made a statement, referring to the "lying testimony of Molly Kronberg, so what happened is, her criminality . . . in trying to set me up in 1979, now was used to set her up! . . .

4

[S]o her criminality was used by the FBI to blackmail her into fraudulent testimony against me!" (Compl. at ¶ 14(xi));

g) **March 25, 2009**: LaRouche wrote or caused to be written an article/press release in a LaRouche PAC publication publicly posted on its website, entitled "More British Empire Lies Against the LaRouches," which stated in part that Kronberg "had established herself as a willing liar more than twenty years ago when, under penalty of prison for her own misconduct, she provided false testimony against LaRouche." (Compl. at ¶ 14(ix));

h) **April 10, 2009**: EIR published an article entitled "It's Time to Reopen LaRouche Exoneration," which stated in part that the case against LaRouche "depended crucially on a key false witness . . . One Marielle Kronberg [who] presented false testimony," and that it was "Kronberg [who] was facing possible criminal charges for kiting checks and other mismanagement of the company . . . and testified falsely in order to avoid prosecution and imprisonment on those charges," and that "without her false testimony," the charges against LaRouche would not have been brought (Compl. at ¶ 17);

i) **April 26, 2009**: in a Morning Briefing "caused to be written and published by LaRouche," published to LaRouche followers and placed on the public Internet, LaRouche wrote, in part, "The organization broke down morally for a period of time, over a suicide, which Molly had driven her husband to! . . . [T]hose of us who knew anything about this, knew that none of us would have gone to prison, not in that trial, not in Alexandria, except for Molly. . . . Molly gave the false testimony without which the trial could not have occurred in Alexandria. . . . So, that is, for me, a good example of immorality: When this woman, who's been a government agent, who became a government agent, who sent a bunch of us to prison directly and deliberately. . . . She lied! It was only her lies that got us imprisoned. If she hadn't had that lie, nobody would have gone to prison in that trial. Now, you've got a situation, where he kills himself, because he was living with that witch: Who's been evil all along! Her behavior had never been good. She's never been honest. . . . [T]here's an understanding of the oppression that [Ken] felt being married to that bitch. . . . And she was evil. And she still is." (Compl. at ¶ 14(v)); and

j) **April 26, 2009**: LaRouche wrote or caused to be written an article/press release in a LaRouche PAC publication publicly posted on its website, entitled "Time to Reopen LaRouche Exoneration," which stated in part that Kronberg "presented false testimony" because of "fraudulent checks which had been uttered by Kronberg" (Compl. at ¶ 14(x)).

5

## III. STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 555 U.S. at 556. For this reason, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. However, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## IV. DISCUSSION

### A. COUNT I: Conspiracy to Injure a Witness Under 42 U.S.C. § 1985

Count I of the Complaint alleges a conspiracy to injure a witness in violation of 42 U.S.C. § 1985. Subsections (2) and (3) of that statute state, in relevant part:

6

> (2) Obstructing justice; intimidating party, witness, or juror
>
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, **or to injure such party or witness in his person or property on account of his having so attended or testified, ...** ;
>
> (3) Depriving persons of rights or privileges
>
> ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

(emphasis added).

Defendants move to dismiss Count I on four alternative grounds: (1) Kronberg lacks standing to pursue a claim under 42 U.S.C. § 1985; (2) Kronberg failed to plead facts sufficient state a cause of action for conspiracy; (3) the alleged conspiracy is legally impossible under the doctrine of intracorporate immunity; and (4) Count I is barred by the statute of limitations to the extent it alleges conduct predating August 21, 2007. The Court addresses each argument below.

### 1. Kronberg's Standing under § 1985

Defendants argue that only an injured "party" to federal proceedings, not a mere witness, such as Kronberg, has standing to assert a private cause of action under 42 U.S.C. § 1985(3), citing holdings in cases from the Seventh and Ninth Circuits. In response, Kronberg claims that non-parties do have standing under the statute, citing in

support of that position holdings in cases from the Third, Fifth, Tenth, and Eleventh Circuits. The Fourth Circuit has not ruled on this issue.

In support of their position, Defendants cite *David v. United States*, 820 F.2d 1038 (9th Cir. 1987), *Blankenship v. McDonald*, 176 F.3d 1192 (9th Cir. 1999), and *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175 (7th Cir. 1989). In *David*, the Ninth Circuit held that a witness at a federal trial could not establish injury under 42 U.S.C. § 1985(2) because "[a]llegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown that the *litigant* was hampered in being able to present an effective case." *David*, 820 F.2d at 1040 (emphasis in original).[2] Revisiting this issue in *Blankenship*, the Ninth Circuit held that a plaintiff who brought a suit against a federal judge and his clerk could not maintain a § 1985 claim for their alleged retaliation against the plaintiff for her testimony in an Equal Employment Opportunity hearing on the grounds that "[b]ecause [plaintiff] was not a party to the EEO proceeding, she can show no injury under § 1985(2)." *Blankenship*, 176 F.3d at 1196 (citing *David*, 820 F.2d at 1040). Similarly, the Seventh Circuit in *Rylewicz* concluded that a witness does not have standing under § 1985 because the "plain language" of § 1985(3) demonstrates Congress's intent to provide a damages remedy only for litigants. "Otherwise the term 'witness' would have been contained in those remedial provisions." *Rylewicz*, 888 F.2d at 1180.

In support of her position, Kronberg relies primarily on *Heffernan v. Hunter*, 189 F.3d 405 (3d Cir. 1999). In *Heffernan*, the Third Circuit, after a lengthy review of

---

[2] *David* dealt with the provision of § 1985(2) that prohibits intimidation of witnesses to prevent them from attending or testifying at trial and not the provision at issue in this case pertaining to injury based on prior testimony.

8

legislative history, concluded that the term "party" in § 1985(3) refers generally to a person that was injured as a result of that person's prior testimony, rather than only to a person who participated as an actual litigant in a prior proceeding.

> As have other courts, we confess some perplexity with the convoluted, rambling and largely unstructured language of the 1871 Act and its 1874 codification. But after patient parsing of the text, it is clear enough that Congress' intent was to extend protection to witnesses and jurors as well as to parties. The word "persons" as used in the 1871 version accomplished that result and the codified text need not be read as inconsistent with the original. The word 'party' may well have been, in the codifiers' minds, simply a synonym for 'person' or 'individual'

*Id.* at 410.[3] The court noted that this conclusion was consistent with the language of the statute itself, even without looking to the original text. In that regard, the court found significant that the statute's reference to "another" in the phrase "whereby another is injured in his person or property" caused the term "party" to include a broader category of persons than the actual litigants. "The phrasing and context persuade us that the term 'party' is not meant to limit the more general term 'another.'" *Id.* Similarly, in *Chavis v. Clayton County Sch. Dist.*, 300 F.3d 1288 (11th Cir. 2002), the Eleventh Circuit rejected the view that "the word 'party' means only a person who was a named party in an earlier case." *Chavis*, 300 F.3d at 1292. Citing *Griffin v. Breckenridge*, 403 U.S. 88, 97 (1971), the court in *Chavis* explained that the Reconstruction Civil Rights Acts, including § 1985, "are to be accorded a sweep as broad as their language." *Id.* (internal citations omitted). Finally, in *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994), in a footnote, the Tenth Circuit notes, "we do not read the word 'party' so literally as to mean 'named

---

[3] Based on that review, the court characterized § 1985 as "almost Kantian in length and complexity" and "a paradigm of poor draftsmanship." *Hefferman*, 189 F.3d at 409

9

party to an action,' especially where the preceding portion of the statute specifically identifies witnesses as protected persons. Moreover, defendants' suggested limitation on standing would effectively emasculate section 1985(2) in the context of this case." *Brever*, 40 F.3d at 1125 n.7.

Without Fourth Circuit guidance on the issue, the Court concludes that a witness, such as Kronberg, has the right to bring a private cause of action under § 1985(3). In support of this conclusion, the Court finds that the word "party" in the phrase "party so injured," when read in context, refers back to "another" in the phrase "whereby another is injured." The word "another" in that phrase clearly means "another person," based on the use of the term "one or more persons" in the preceding phrase. Given the remedial purposes of the statute at the time it was adopted, this construction is the most appropriate. Accordingly, Kronberg has standing as a witness to bring a claim under § 1985, and the motion to dismiss as to Count I for lack of standing is denied.

### 2. Sufficiency of the Facts Alleged

Defendants next argue that Kronberg has failed to state a claim under § 1985 because her conspiracy allegations are conclusory and are not plausible on their face.

Conspiracy to obstruct justice under § 1985(2) occurs when "'[t]wo or more persons conspire to injure [a] person or witness in his person or property' in retaliation for that party or witness testifying in any court of the United States." *Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000) (citing 42 U.S.C. § 1985(2)), *aff'd* 28 Fed. Appx. 186 (4th Cir. 2002). "To prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (finding

insufficient evidence existed to support plaintiff's conspiracy claim on motion for summary judgment). In *Lewin*, the district court dismissed plaintiff's § 1985 claim for failure to state a claim because plaintiff "has made general conclusory allegations that defendants conspired to retaliate against him, . . . but plaintiff has failed to provide any specific evidence of such a conspiracy."[4] *Lewin*, 95 F. Supp. at 526.

In this case, Kronberg has alleged more than "general conclusory allegations" of a conspiracy. Specifically, Kronberg alleges specific facts pertaining to the interrelationships of the parties, the specific overt acts undertaken in furtherance of the conspiracy, and the Defendants' coordination and participation with each other in carrying out the alleged conspiracy. *See* Complaint, ¶¶ 14-17. The Complaint also alleges that Defendants have long-established relationships with each other and participated together in coordinated and concerted activities which resulted in the published statements that Kronberg alleges are defamatory *per se*.[5]

Defendants also argue that based on the facts alleged, Kronberg's § 1985 claim is not plausible on its face. In support of this argument, Defendants rely on the fact that there has been a twenty year time lapse between the alleged conspiracy and Kronberg's

---

[4] In the criminal context, where the standard of proof is higher than in this civil case, courts routinely permit a claim of conspiracy to be proved, not on the basis of direct evidence, but by circumstantial evidence and reasonable inferences based on concerted or coordinated activity, the relationship among members of the alleged conspiracy, and the length of association among members of the alleged conspiracy. *See United States v. Burgos*, 94 F. 3d 849, 860 (4th Cir. 1996); *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir. 1984). Moreover, the recognition in criminal cases that a conspiracy is often, by its nature, "clandestine and covert, thereby frequently resulting in little direct evidence of an agreement," is relevant to this case. *Burgos*, 94 F.3d at 857.

[5] For example, the Complaint alleges a February 20, 2009 article/press release written by LaRouche and Boyd; a February 26, 2009 article/press release written by LaRouche and published on the LaRouche PAC website; and the editorial written in EIR. Complaint at ¶¶ 14(vii), 14(viii), and 15.

trial testimony that allegedly caused Defendants to conspire to retaliate against her. The Court finds this position without merit. The allegedly defamatory statements at issue refer directly to Kronberg's testimony; and unlike the cases cited by Defendants in support of their argument, there is no question that the Defendants' alleged conduct is directly related to Kronberg's testimony, regardless of the passage of time. *Cf., e.g., Plampin v. United States Fidelity & Guaranty Co.*, 463 F. Supp. 972 (D.S.C. 1978) (finding that plaintiff's fight with the defendant-sheriff's son that occurred a year prior was too remote in time to establish a nexus between the fight and the sheriff department's mistreatment of plaintiff to support an allegation of a conspiracy against him when no other evidence demonstrated that anyone knew of the fight).

Here, the facts as alleged, when accepted as true and viewed most favorably to Kronberg, give rise to a reasonable inference of a conspiracy under § 1985(3). *C.f. Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (2003) (affirming dismissal of a § 1985 claim for failure to state a claim where facts alleged in support of conspiracy between plaintiff's employer and the EEOC – that the employer would not tell plaintiff when it spoke to the EEOC, that the employer filed a late response to plaintiff's complaint, and that the EEOC's record did not contain information relating to their investigation of her claim – did not give rise to a reasonable inference of a conspiracy between the EEOC and the employer). Because Kronberg's claim is plausible based on the facts alleged, it survives Defendants' motion to dismiss. Accordingly, Defendants' motion to dismiss based on the Complaint's failure to plead sufficient facts to allege a § 1985 violation is denied.

### 3. Intracorporate Immunity

Defendants next argue that Kronberg has failed to state a claim under § 1985 because her claim is precluded by the doctrine of intracorporate immunity. Specifically, Defendants argue that they all share a common purpose or agency relationship and, for that reason, they do not constitute two or more discreet persons, as is required to state a claim for conspiracy under § 1985.

Under the intracorporate immunity doctrine, a corporation and its agents comprise a single legal entity and are therefore legally incapable of conspiracy. *Lewin*, 95 F. Supp. 2d at 524. In the § 1985 context, two exceptions exist: (1) "An exception may be justified when the officer has an independent personal stake in achieving the corporation's illegal objective" (*Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)); and (2) "unauthorized acts in furtherance of a conspiracy may state a claim under § 1983(3). Thus, while authorized acts of the official would constitute corporate action, (and hence avoid a conspiracy charge), unauthorized acts would not." *Buschi v. Kirven*, 775 F.2d 1240, 1252-53 (4th Cir. 1985) (internal citations omitted).

Defendants argue that Boyd, as an officer of the LaRouche PAC, cannot be a separate party to any conspiracy because the Complaint does not allege that she acted outside the scope of her duties as an officer of LaRouche PAC. "Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Buschi*, 775 F.2d as 1252. Defendants also argue that LaRouche, the LaRouche PAC, and EIR, while legally separate entities, cannot be found to conspire under the "functional approach" of

intracorporate immunity, adopted by the Fourth Circuit to apply to Sherman Act claims. *Williams v. 5300 Columbia Pike Corp.*, 891 F. Supp. 1169, 1175 (E.D. Va. 1995) (discussing the functional approach to intracorporate immunity) (citing *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 703 (4th Cir. 1991)). Under the functional approach, two legally separate entities cannot be found to conspire if they share a "similar unity of interest." *Id.* Defendants argue that LaRouche, the LaRouche PAC founded by LaRouche, and EIR, for which LaRouche acted as the founding editor and is currently a contributing editor, share the requisite unity of interest, as demonstrated by Kronberg's own position that they worked in concert to conspire against her, and that therefore the intracorporate immunity doctrine should preclude a conspiracy claim against them.

Kronberg argues that the intracorporate immunity doctrine does not support a dismissal at this stage on multiple grounds: (1) an examination of whether intracorporate immunity applies here entails a fact inquiry inappropriate for a motion to dismiss; (2) the "functional approach" is generally only applied to entities that are legally related and to Sherman Act cases; and (3) the Complaint does not allege that the individual Defendants, LaRouche and Boyd, have acted exclusively as agents of the corporate Defendants.

The Court cannot conclude as a matter of law, based on the facts in the Complaint viewed most favorably to Kronberg, whether there is an agency relationship among the Defendants such that the application of the intracorporate immunity doctrine is appropriate or, if the doctrine applies, whether an exception to the doctrine can be established in this case. It is similarly premature to address whether the parties share a similar unity of interest and, if so, whether the functional approach to intracorporate immunity applies. *See Bell v. City of Roanoke Sheriff's Office*, No. 7:09-cv-214, 2009

WL 5083459, *4 (W.D. Dec. 23, 2009) ("Because the applicability of the exceptions to intracorporate immunity entail a factual inquiry, the court will deny the defendants' motion to dismiss on the grounds of intracorporate immunity."). Accordingly, the motion to dismiss Count I on those grounds is denied without prejudice to being renewed at an appropriate time.

### 4.     Statute of Limitations

The parties agree that a two year statute of limitations applies to a § 1985 witness retaliation claim. Kronberg concedes that some of Defendants' conduct alleged in the Complaint occurred outside of the statute of limitations but argues that (1) the earlier acts are relevant to the formation of the conspiracy and so long as some of the conspiracy acts have occurred within the statute of limitations (even if the formation of the conspiracy did not) the claim survives and (2) all of the alleged acts are actionable under a continuing tort theory.

Generally, courts that have addressed the issue have found that "the statute of limitations runs separately from each overt act that is alleged to cause damage to the plaintiff." *Morales v. Robinson*, No. 2:05-cv-509, 2007 WL 1074836, *8 (S.D. W.Va. Apr. 6, 2007) (noting "every circuit court of appeals to have addressed this question adheres to this view"). Because some acts in furtherance of the conspiracy occurred within the statute of limitations, the § 1985 count should not be dismissed on the grounds that some acts occurred outside the statute of limitations.

In addition, even tortious acts outside the applicable statute of limitations may be actionable under a continuing tort theory. For a court to apply the continuing tort theory, a plaintiff "must establish that the unconstitutional or illegal act was a fixed and

15

continuing practice." *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166-67 (4th Cir. 1991). For example, in *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994), in a § 1983 and § 1985 case, the court found a continuing wrong based on the plaintiff's hostile work environment claim. The court explained that, "[w]hile discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation," the court could find a continuing violation "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.* at 704. *See also Smith v. Shorstein*, 217 Fed. Appx. 877, 881, 2007 WL 460831, *4 (11th Cir. 2007) (finding a continuing violation where prisoner was wrongfully confined and the court concluded that the ongoing confinement was a fixed wrong).

Whether Kornberg can establish a continuing tort may ultimately hinge on whether Kronberg can prove that the alleged acts of the conspiracy were part of an ongoing practice or campaign as opposed to discrete unrelated acts. For purposes of the motion to dismiss, however, taking all allegations as true, the Court finds that Kronberg has pled sufficient facts to establish a claim of an ongoing practice or campaign. Accordingly, the motion to dismiss Kronberg's § 1985 claim is denied.

### B. COUNT II: Libel *Per* Se

Defendants argue that Count II, libel *per se*, should be dismissed on three alternative grounds: (1) if the Court dismisses Count I, the Court should not exercise supplemental jurisdiction over the state law claim in Count II; (2) Count II fails to state a claim and fails to allege statements that would constitute defamation *per se*; or (3) Count

II is time barred to the extent it relies on statements made before August 21, 2008. Because the Court has denies Defendants' motion to dismiss Count I, the Court will not address Defendants' first argument.

### 1. Sufficiency of the Facts Alleged

Defendants argue that Kronberg's Complaint fails to state a claim for libel *per se* under Fed. R. 12(b)(6) because the alleged statements do not fall under one of the categories that, under Virginia law, constitutes libel *per se*.

Under Virginia law, libel *per se* applies when statements include:

> (1) Those which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished.

*Carwile v. Richmond Newspapers*, 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954). Defendants assert that the allegedly defamatory statements listed in the Complaint do not fall into this category.[6]

The statements alleged in the Complaint either quote Defendants or attribute statements to Defendants accusing Kronberg of perjury. 18 U.S.C. § 1623 criminalizes perjury. Accordingly, the statements in the Complaint stating the Kronberg lied in her testimony fall under the purview of libel *per se*, and Kronberg has adequately pled that claim.

### 2. Statute of Limitations

Finally, Defendants argue that the one year statute of limitations that applies to defamation cases in Virginia requires striking from the Complaint all statements made

---

[6] Defendants seem to concede for purposes of their motion that Kronberg has sufficiently alleged that Defendants made false or misleading statements about her and that Defendants published those statements to the public.

before August 21, 2008. Va. Code Ann. § 8.01-248.[7] The statements cited in the Complaint that were made after August 21, 2008 fall within the statute of limitations. For these reasons, Defendants' motion to dismiss Count II of the Complaint is denied.

To the extent that Kronberg's libel *per se* claim is based on any statements made prior to August 21, 2008, those statements are time-barred and are not actionable as libel *per se*. However, these statements appear to be relevant to Kronberg's conspiracy claim, her libel *per se* claim, and her claim for punitive damages; and for these reasons they will not be stricken from the Complaint.

### C. EMOTIONAL DISTRESS DAMAGES

As a final matter, Defendants argue that Kronberg's Complaint surreptitiously pleads an intentional infliction of emotional distress tort claim disguised as a claim for emotional distress damages, which should be dismissed. Specifically, the Complaint states that all of the allegedly defamatory statements "inflict upon her severe emotional distress, . . . all for the purpose of causing Molly Kronberg severe emotional distress and which in fact did cause her such emotional distress." Compl. at ¶ 24.

Emotional distress damages have been awarded in defamation suits, *see, e.g., Stamathis v. Flying J, Inc.*, 389 F.3d 429, 439 (4th Cir. 2004) (upholding award for "insult pain and mental suffering" in addition to out-of-pocket loss in defamation and malicious prosecution action), and are available when a plaintiff has a cause of action for an intentional tort such as defamation, even when there is no physical injury. *See Sea-Lan Service, Inc. v. O'Neal*, 224 Va. 343, 354, 297 S.E. 2d 647, 653 (1982) ("[W]e

---

[7] The continuing tort violation theory does not apply to defamation. "[R]epeated defamations do not constitute a continuing tort; rather, courts have uniformly recognized, each separate defamatory statement itself constitutes a separate and distinct cause of action." *Lewis v. Gupta*, 54 F. Supp. 2d 611, 616 (E.D. Va. 1999).

18

have approved the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, where a cause of action existed independently of such harm."). Accordingly, the motion to dismiss. Kronberg's claim for emotional distress damages is denied.

## V. CONCLUSION

For these reasons, Defendant's Motion to Dismiss is denied.

An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 9, 2010