IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARIELLE ("MOLLY") KRONBERG, ) ) Plaintiff, ) ) v. ) ) LYNDON LAROUCHE, et al., ) ) Defendants. ) ) | No. 1:09cv947 (AJT/TRJ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Joint Motion to Disqualify Former AUSA Markham (Doc. No. 25). For the reasons stated below, the motion is granted.

Over twenty years ago, Plaintiff Marielle Kronberg's counsel, John E. Markham, III ("Markham"), then an Assistant United States Attorney ("AUSA"), participated in the criminal prosecutions of Lyndon LaRouche ("LaRouche") in a number of jurisdictions, including the prosecution of LaRouche in this Court in 1988. In the trial held in this Court, Plaintiff Marielle Kronberg ("Kronberg"), a supporter and associate of LaRouche at that time, was subpoenaed to testify, and did testify, as one of more than twenty prosecution witnesses against LaRouche. LaRouche was convicted at that trial and served five years in prison for that conviction.

On August 21, 2009, Kronberg filed this action against LaRouche, Barbara Boyd ("Boyd"), EIR News Service, Inc. ("EIR"), and the Lyndon LaRouche Political Action Committee ("LaRouche PAC"), (collectively, "Defendants"). In her two count Complaint, Kronberg alleges (1) Conspiracy to Injure a Witness under 42 U.S.C. § 1985 and (2) Libel *Per Se*. Kronberg's claims stem from allegations that beginning in 2008,

Defendants conspired to defame her, and did defame her, in retaliation for her testimony twenty years ago against LaRouche in this Court. More specifically, Kronberg alleges that LaRouche and the other Defendants have made statements that Kronberg testified falsely at LaRouche's trial and that LaRouche was wrongly convicted because of Kronberg's testimony.

Defendants have now moved to disqualify Markham on the grounds that Markham had access to non-public, confidential information concerning LaRouche in connection with the criminal prosecutions against him, including classified information, that has never been disclosed to LaRouche or his criminal defense counsel.

## I. FACTS

The following facts, briefly summarized, are relevant to the disqualification motion. Markham was substantially and personally involved in prosecuting LaRouche in a number of jurisdictions over a period of years during the 1980's. Specifically, starting in 1986 and lasting for a period of approximately two years, Markham participated in a grand jury investigation pertaining to LaRouche and led the prosecution team in a criminal trial against LaRouche in Boston, Massachusetts and, for three months in 1988, assisted the United States Attorneys' Office in this district in Alexandria, Virginia in connection with a criminal trial against LaRouche and others. Markham ceased working for the federal government in 1989. His first contact with Kronberg occurred in 2009, when she approached him about the claims at issue in the current litigation.

The prosecution in Alexandria is the most relevant to this motion, since it was during that prosecution that Kronberg provided the testimony that is central to her claims in this action against Defendants. Based on submissions concerning this disqualification

2

motion,[1] it appears that Markham did not participate in the grand jury proceedings in the Alexandria prosecution and never received any grand jury materials. Markham also represents that he never spoke with Kronberg or Kronberg's husband, that he never saw any EIR documents, and that the LaRouche PAC was not in existence at the time of that prosecution. However, Markham concedes that he participated in the investigation and prosecution of LaRouche "personally and substantially." Mem. in Opp. at Declaration of John Markham Addressing Certain Matters Raised in the Motion to Disqualify Him (hereinafter, "Markham Decl.") at ¶ 9. Markham also concedes that during each of these proceedings he had access to and reviewed confidential information, including classified information, about LaRouche and his activities and that, while a large portion of that confidential information was turned over to LaRouche and his counsel, there was, in fact, some confidential information that he had access to and reviewed that was not shared with LaRouche. Markham no longer has access to such information and he claims that most of that information is now a part of the public record and that, after more than twenty years, he does not remember the confidential information. Markham further claims that any relevant information was made available to LaRouche, that he has not and will not rely on or use any such information in this action, and that such information is, in any event, irrelevant to the claims that Kronberg has asserted.

## II. DISCUSSION

Disqualification of an attorney "is a serious matter which cannot be based on imagined scenarios of conflict, and the moving party has a high standard of proof to meet

---

[1] The facts pertaining to this Motion, and Markham's access to, and current state of knowledge concerning, non-disclosed confidential information is not materially in dispute and, for that reason, the Court concludes that an evidentiary hearing is unnecessary to rule on Defendants' Motion to Disqualify.

in order to prove that counsel should be disqualified." *In re Stokes*, 156 B.R. 181, 185 (Bankr. E.D. Va. 1993) (internal citations omitted). The Court must balance several factors in deciding a motion to disqualify including a party's right to retain counsel of her choice, the substantial hardship that could result from disqualification, and "the public perception of and the public trust in the judicial system." *Id.*

Defendants move to disqualify Markham based on the Virginia Rules of Professional Conduct[2] pertaining to former government attorneys' obligations and conduct: Virginia Rule of Professional Conduct ("Rule") 1.11(b)[3]; Rule 1.11(c); and 5 C.F.R. § 2641.201(a)[4]. The Court finds that it need address only Rule 1.11(c).

Rule 1.11(c) states in relevant part:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer

---

[2] The Virginia Rules of Professional Conduct apply in this Court. *See* L.R. 83.1(I).

[3] Rule 1.11(b) prohibits Markham from representing a private client in connection with a matter in which he participated personally and substantially as a government attorney, unless the private client and the appropriate government agency consent. The parties debate whether the current action is "in connection with" the earlier prosecution. Markham has not obtained consent from the government. The Court declines to address the applicability of the Rule, however, in light of its holding regarding Rule 1.11(c).

[4] Rule 1.11(e)(2) incorporates other conflict of interest rules governing former government employees, which include restrictions stated in 5 C.F.R. § 2641.201 and 18 U.S.C. § 207(a)(1). Pursuant to 5 C.F.R. § 2641.201, Markham is barred from representing a private party "in connection with" a matter in which he participated in substantially and in which the United States is a party or has a direct or substantial interest. Because the United States is not a party and does not have an interest in this case, the Court finds 5 C.F.R. § 2641.201 inapplicable.

> is screened from any participation in the matter and is
> apportioned no part of the fee therefrom.

Applying the Rule here, Markham should be disqualified if (1) he has confidential government information he acquired while working as an AUSA about one or more Defendants; (2) Kronberg's interests are adverse to the Defendants in this matter; and (3) the confidential government information "could be used in this matter to the material disadvantage" to one or more Defendants. There is no doubt that Kronberg's interests are adverse to Defendants in this matter. Less clear-cut is the outcome of the analysis based on the remaining two elements of the Rule when applied to the facts pertaining to this motion.

The Court must first address whether Markham has confidential government information about one or more Defendants that he acquired while working as an AUSA. Rule 1.11(f) defines "confidential government information" as "[i]nformation which has been obtained under governmental authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public." Rule 1.11(c) only applies if Markham has actual knowledge of this confidential government information. *See* Comment 8 to Rule 1.11 ("Paragraph (c) operates only when the lawyer in question has knowledge of the information, which means actual knowledge: it does not operate with respect to information that merely could be imputed to the lawyer."). As described above, Markham concedes that in the 1980's he had access to and actual knowledge of confidential information related to LaRouche and LaRouche's activities, as well as the LaRouche organization, though Markham denies that he ever had access to information relating to EIR, LaRouche PAC, Boyd's testimony, or Kronberg's testimony.

There is no question that Markham, while involved with the LaRouche prosecutions, obtained "confidential government information" and had actual knowledge of confidential government information related to LaRouche during the 1980's. Markham argues, however, that the LaRouche information that was confidential during the 1980s now "is largely in the public record." Mem. in Opp. at 1. Markham does not assert that *all* of the information that was confidential during the LaRouche prosecutions is now in the public record, and Defendants have attached exhibits to their Memorandum in support of their disqualification motion that demonstrate that certain materials used in the prosecutions of LaRouche remain redacted or classified. The Court therefore finds that at least some information constituting confidential government information during the 1980's prosecutions remains confidential government information today.

The question for the Court, then, is whether for the purposes of Rule 1.11(c) Markham continues to possess actual knowledge of that "confidential government information." Markham argues that since he no longer has access to any confidential information or documentation and "recalls very little" of the confidential government information that he once had access to (Markham Decl. at ¶ 2), he should not be deemed to possess actual knowledge of confidential government information. But it is also clear that Markham cannot segregate what he now remembers and knows about LaRouche based on non-confidential information from what he may know from still-confidential information. The Court must therefore consider whether the passage of twenty years coupled with Markham's assertion that he does not recall the substance of any of the information is sufficient to establish that Markham no long has actual knowledge of the confidential government information.

None of the parties has cited any cases that deal precisely with this issue, namely whether passage of time negates actual knowledge of confidential government information obtained when an attorney was a government attorney.[5] On the one hand, Defendants cite numerous conflict of interest cases standing for the proposition that the passage of time and an attorney's credible assertion that he does not recall the confidential information are not sufficient to negate an attorney's possession of actual knowledge of confidential information. *See, e.g., Smith & Nephew, Inc. v. Ethicon, Inc.*, 98 F. Supp. 2d 106 (D. Mass. 2000) (disqualifying, under the Massachusetts Rules of Professional Conduct, an attorney who had been involved in a substantially similar matter fifteen years earlier, noting that the attorney's argument that the fifteen year passage of time "cloak[s] confidences as effectively as a sip from the waters of Lethe" was contradicted by attorney's own concession that he was familiar with the earlier matter and recalled pieces of that matter). *See also Schwed v. General Electric Co.*, 990 F. Supp. 113, 117 n.2 (N.D.N.Y. 1998) (finding that attorney's sincere assertion that he did not recall confidential information irrelevant to issue of whether he had access to such information); *Arifi v. de Transport du Cocher, Inc.*, 290 F. Supp. 2d 344, 350 (E.D.N.Y. 2003) (same). On the other hand, Markham points out, correctly, that the cases cited by Defendants do not involve government attorneys, but rather involve private attorneys and

---

[5] The Court has not found, and the parties have not cited, any Virginia Legal Ethics Opinions discussing the scope or application of Rule 1.11(c). Defendants have cited Legal Ethics Opinion 1746, but the analysis in that Opinion is limited to Rule 1.11(b), other than its note that the hypothetical scenarios laid out therein "lack detail regarding the content of confidential information received in each instance of public representation. Accordingly, the Committee declines to determine whether the attorney would be prohibited from accepting the new representation due to a prior receipt of pertinent confidential information."

the application of state conflict of interest rules. Nevertheless, Markham does not cite any cases in the context of a motion to disqualify a former government attorney that support his position that lack of memory and passage of time negate one's possession of confidential government information and the Court has been unable to find any authority supporting Markham's position. Since Markham concedes that he possessed and had access to "confidential government information," his lack of memory concerning that information does not insulate him from the reach of Rule 1.11(c). Accordingly, the Court finds that the passage of twenty years does not "undo" Markham's actual knowledge even if Markham cannot today remember the confidential government information.

Finally, the Court must determine whether the confidential government information "could be used to the material disadvantage" of one or more Defendants. Defendants argue that the confidential government information could assist Kronberg since it potentially consists[6] of information relating to LaRouche, the activities of LaRouche, and information about LaRouche organizations and his associates, including Kronberg and her husband, Ken Kronberg, the circumstances of whose death in 2007 Kronberg claims are relevant to this litigation. In response, Markham argues that he had no access to information regarding Kronberg's testimony or about Ken Kronberg during the earlier prosecutions, and that, as a practical matter, given his lack of memory and current lack of access, he is unable to use any confidential information about LaRouche to the material disadvantage of Defendants. For these reasons, Markham claims that he is in no different position than LaRouche's counsel in this case who represented LaRouche

---

[6] Defendants understandably argue that they cannot predict with any degree of certainty how the information could be used to their disadvantage because they do not and cannot know the exact contents of the confidential information.

8

during those same criminal prosecutions. In fact, claims Markham, he is in a less advantageous position than Defendants since LaRouche has the documents that were delivered to him during those criminal prosecutions, whereas Markham does not have those documents or independent access to them.[7]

This question of whether confidential government information could be used to the Defendants' material disadvantage is the most difficult because it is inherently predictive and requires the Court to engage in informed conjecture as to what information will become relevant as the case progresses. While the Court credits Markham's assertion that he never spoke to Kronberg during the 1988 trial and therefore will have no advantage in litigating the veracity of Kronberg's testimony at that trial, there are other issues that are likely to emerge in this litigation, including the credibility of the Defendants, the structure of LaRouche's organizations generally, the role of other individuals who worked with Kronberg during the period of time at issue in the earlier prosecutions, the relationship among the Defendants, and LaRouche's other activities that may be admissible under Fed. R. Evid. 608(b) or otherwise. And while Markham contends that as a practical matter he will be unable to obtain any advantage over Defendants based on such information, either because Defendants have access to the information or because Markham no longer remembers the information, the Court finds that there is no way for Markham to ensure that he will not remember confidential information or that he will be able to differentiate now, twenty years after learning the

---

[7] Given Defendants' position concerning the potential relevance that documents relating to the LaRouche prosecutions have to this litigation, the Court would not expect Defendants to resist discovery, and document discovery, in particular, on the grounds that documents and information they obtained from the government in connection with the LaRouche prosecutions are not relevant or discoverable.

information, between information he obtained that was public and information that was, and remains, classified. For example, Markham's memory could be triggered as the case progresses by witness interviews or document review. Such an inadvertent (even if unlikely) occurrence could not only disadvantage Defendants, but could also potentially create a conflict for Markham with his own client were he to find himself in a position where he became aware of information potentially helpful to his client that he is ethically barred from using or disclosing. At the very least, Markham surely has a mental roadmap concerning LaRouche and his activities that was shaped at least in part by his access to confidential government information. The Court therefore finds that Markham's access to confidential government information about a variety of relevant topics obtained as a result of his extended role prosecuting LaRouche could materially disadvantage one or more of the Defendants in this case.

The Court has also considered more general factors such as the hardship on Kronberg that would result from disqualifying Markham and the impact on the public perception of the judicial process if Markham's representation continues. There is no question that the disqualification of Markham will impact Kronberg adversely, particularly in light of Markham's background and prior knowledge concerning LaRouche and his activities and associates that Markham acquired as a government lawyer. However, Rule 1.11(c) compels the imposition of this hardship in this case. While there is no ethical barrier to Markham's using non-confidential information obtained in his role as a government attorney for the benefit of a private litigant that retains him following his government service, the propriety of any such representation must be governed by the restraints imposed on that representation under Rule 1.11(c) and

the risks that the Rule is intended to minimize or eliminate altogether for a private litigant, such as LaRouche, who finds himself facing the same prosecuting attorney now acting on behalf of a private party. In its analysis, the Court has also considered that local counsel has entered an appearance on behalf of Kronberg and that this litigation is at an early stage, with no discovery yet conducted and without the issuance of a Scheduling Order.[8]

Finally, in addressing the issues raised under Rule 1.11(c), the Court must consider the overarching need to preserve the integrity of the judicial system and to avoid the appearance of impropriety that may compromise the public perception of the judicial process. Here, Markham served as one of the United States' principal representatives in its long and successful effort to convict LaRouche of criminal activity. Markham's involvement on behalf of a private individual in an action against LaRouche in a matter that certainly touches upon matters that occupied him as a government prosecutor raises the specter that the privileged access to information he was extended as a prosecutor will now be used to his benefit and that of his client. *See Sanford v. Virginia*, --- F. Supp. 2d ---, 2009 WL 4430295, \*10 (E.D. Va. Dec. 2, 2009) ("In determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, . . . with the view of preventing 'the appearance of impropriety' [the Court should] resolve all doubts in favor of disqualification.") (quoting *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977)). Disqualification is

---

[8] The Court will also consider reasonable requests to adjust its standard litigation schedule in order to facilitate the transition to substitute lead counsel.

11

therefore necessary to protect the public perception of and the public trust in the judicial system.[9]

For all of these reasons, the Court concludes that Defendants have met the high burden of establishing that the confidential government information obtained by Markham during the LaRouche prosecution "could be used to the material disadvantage" of Defendants in this lawsuit. Accordingly, Rule 1.11(c) applies and Markham must be disqualified.[10]

---

[9] While there is a dearth of case law analyzing analogous facts, the Court's decision is consistent with comparable jurisprudence. For example, in *Tucker v. George*, 569 F. Supp. 2d 834 (W.D. Wisc. 2008), the court disqualified a law firm from representing a plaintiff in a lawsuit against a state where members of the law firm had assisted in a criminal investigation of a state official on behalf of the state and the plaintiff had alleged that the state official had retaliated against her for making statements that were related to the criminal investigation. Applying a rule identical in part to Rule 1.11(c), and acknowledging the outcome was "harsh," the court in *Tucker* disqualified the plaintiff's law firm, in part because such representation had the appearance of impropriety. There are also numerous cases disqualifying former government attorneys under Rule 1.11(c) or analogous rules, involving situations where a former prosecutor has "switched sides." For example, disqualification has been ordered where a former prosecutor leaves government service and undertakes the representation of a defendant that was the subject of the criminal prosecution or government investigation. *See In re Asbestos Cases*, 514 F. Supp. 914 (E.D. Va. 1981); *Commonwealth of Kentucky v. Miracle*, 10 S.W. 3d 117, 118 (Ky. 2000); *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 33 (D.D.C. 2004).

[10] The Court emphasizes that this ruling does not suggest or imply any finding or view that Markham has engaged in any wrongdoing or that he has committed any ethical violation.

## III. CONCLUSION

For these reasons, Defendants' Joint Motion to Disqualify Former AUSA Markham (Doc. No. 25) is granted.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 9, 2010